CONTIE, Circuit Judge.
 

 Plaintiff-appellant, James N. Gaines, appeals the district court’s grant of summary judgment to defendant-appellee, Marvin Runyon, Postmaster General, United States Postal Service, in this action for discrimination on the basis of a disability and failure to accommodate a disability pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701
 
 et seq.
 
 (“the Act”).
 

 I.
 

 Plaintiff Gaines is an employee of defendant, Marvin Runyon, Postmaster General of the United States Postal Service (“USPS” or the “Agency”) where he has worked since 1977. In February 1987, plaintiff was assigned to a supervisory position on Tour 3 (the evening shift) at the General Mail Facility (“GMF”) in Louisville, Kentucky. After plaintiff was subject to a disciplinary action and he appealed the action, he was reassigned to a supervisory position at the Airport Mail Facility (“AMF”) on June 8, 1992.
 

 This appeal concerns the location where plaintiff was working and the shift on which he was working. When he was at GMF before the disciplinary action, he was assigned to a Tour 3 shift and worked the hours of 3 p.m. to 11 p.m. five days a week. In his new position at AMF, he worked a split shift — three days on the day shift or Tour 2 (7 a.m. to 3:30 p.m. on Thursday through Saturday) and two days on the evening shift or Tour 3 (1 p.m. to 9:30 p.m. on Sunday and 2:30 p.m. to 11 p.m. on Monday). In July 1992, five weeks after he began working at AMF, plaintiff, who is an epileptic, suffered a seizure at home and broke his shoulder. He underwent shoulder surgery and returned to work in September 1992. He was placed on light duty status due to the restrictions imposed on him because of his shoulder injury. At this time, however, plaintiff did not inform USPS that this injury occurred as a result of an epileptic seizure.
 

 In the fall of 1992, USPS undertook a reduction in force (“RIF”). As part of the RIF, plaintiff was notified that the number of
 
 *-411
 
 supervisory positions at AMF was going to be reduced and that all supervisors had to submit an application indicating their first and second choices for the remaining positions. Plaintiff indicated two choices for supervisory positions; his first choice was a day shift position at AMF, and his second choice was an evening shift position at AMF. However, in making these choices, plaintiff gave no indication that he needed either of these shifts or the AMF location as an accommodation for a disability relating to epilepsy. On December 24, 1992, USPS informed Gaines that he had not been selected for either supervisory position at AMF.
 

 Instead, plaintiff was offered a Tour 3 supervisory position at GMF to begin on January 9, 1993. This was the same shift and location where plaintiff had worked before being transferred to AMF in June 1992. After he received this assignment, plaintiff made a request on January 8,1993 that he be assigned to a Tour 2 supervisory position at AMF as an accommodation for his epilepsy. He claimed that he needed to maintain regular sleep patterns and that a change in shifts and location could cause him to have a seizure. Therefore, he asked USPS to assign him to a Tour 2 supervisory position at AMF as an accommodation.
 

 However, no Tour 2 positions were available at either AMF or GMF. Therefore, USPS told plaintiff that his request for a Tour 2 assignment could not be granted and again offered him the Tour 3 position at GMF. Instead of reporting to work at GMF, plaintiff requested sick leave for the period during which USPS was considering his request for a Tour 2 assignment at AMF. He still had light duty restrictions, and sick leave was authorized.
 

 On February 27, 1993, plaintiff was medically cleared to return to work with no restrictions. Plaintiff ended his sick leave status and returned to work at GMF in a supervisory position on Tour 3. Shortly afterward, he suffered a seizure while off duty and was on sick leave for one week. In mid-March, he returned to work at GMF on the Tour 3 shift. On approximately June 16, 1993, he was offered a position on Tour 2, which was the shift he had requested as an accommodation and which was now available at GMF, but he declined the offer, stating that he had adjusted to his new schedule. In December 1993, plaintiff was informed that there was no evidence that his request for reassignment to AMF was needed, because plaintiff’s condition did not prevent performance of the essential functions of his job at GMF. Since March 1993, according to the record, plaintiff has worked on the Tour 3 shift in a supervisory position at GMF without incident.
 

 Plaintiff filed an Equal Employment Opportunity complaint, alleging that USPS engaged in discrimination on the basis of sex, race, and disability (epilepsy/seizure disorder) when, after the RIF, it failed to select him in December 1992 for a supervisory position at AMF on the Tour 2 or Tour 3 shifts.
 
 [1]
 
 He also claimed that USPS discriminated against him by failing to accommodate his disability when it denied his January 8, 1993 request for a Tour 2 position at AMF.
 
 [2]
 

 After a hearing before an Equal Employment Opportunity Commission (“EEOC”) administrative judge (“AJ”), the AJ issued a recommendation.
 
 [3]
 
 The AJ found that plaintiff failed to prove any discrimination when USPS faffed to assign him to either of the two supervisory job assignments he had requested after the RIF in December 1992. The AJ determined that plaintiff failed to establish a
 
 prima facie
 
 case of handicap discrimination or failure to accommodate in regard to his December 1992 assignment because he failed to make known to USPS that he had a disability that needed aecommoda
 
 *-410
 
 tion. However, the AJ recommended a finding of discrimination for failure to accommodate plaintiffs disability during the period from January 26, 1993 to June 16, 1993, the date plaintiff refused a Tour 2 position at GMF. The AJ found that plaintiff had established a prima
 
 facie
 
 case of discrimination after plaintiff notified USPS of his epilepsy on January 8, 1993 and requested an accommodation, and USPS failed to accommodate his disability by not finding him a position on Tour 2 sooner.
 
 [4]
 

 The AJ found that USPS failed to demonstrate that accommodating plaintiff’s request for a Tour 2 shift would have placed an undue hardship on the operations of its program. The AJ assumed that plaintiff had a need for the requested Tour 2 accommodation and concluded that USPS did not prove that it could not place him on a Tour 2 shift before June 16, 1993. According to the AJ, in January 1993, although there were no permanent Tour 2 positions available, there were some Tour 2 supervisory hours at AMF, which were being performed by employees on temporary duty. The AJ believed that these hours could have been assigned to plaintiff instead. Also, the AJ found that if management had “dug deeper,” they would have learned that an employee on Tour 2 at GMF wanted to switch to Tour 1, the night shift. The AJ concluded that the “fact that a Tour 2 employee had actually requested Tour 1 and was in the position that could be offered to Complainant in June 1993 suggests that, with some searching, the Agency could have discovered this fact in time to act to possibly avert Complainant’s March seizure.” The AJ concluded that USPS failed to reasonably accommodate plaintiff’s disability by not offering him a Tour 2 assignment until June 16, 1993, and as a remedy, plaintiff’s sick leave should be restored. The AJ determined that the sick leave which plaintiff used in January and February 1993, while USPS was considering his request for a Tour 2 position at AMF, and the sick leave he used following his March 1993 seizure should be restored. However, on May 17, 1994, USPS issued a Final Agency Decision, which rejected the AJ’s recommendation and found that plaintiff had failed to demonstrate any unlawful discrimination or failure to accommodate.
 

 Plaintiff then filed suit in the United States District Court for the Western District of Kentucky. On January 4, 1996, the district court granted summary judgment to defendant USPS. The district court explained that plaintiff presented no evidence that the December 1992 job assignments were made on the basis of his disability, because at that time' he had not made his disability known to USPS. The court also concluded that there was no failure to accommodate during this period as plaintiff had never informed USPS that he needed a particular location or shift because of his disability. In addition, the district court concluded that plaintiff failed to establish that he needed the “Tour 2 at AMF” accommodation requested on January 8, 1993. The district court disagreed with the finding of the AJ that USPS could have tried harder to accommodate plaintiff without undue hardship, because the court found no evidence in the record that plaintiff needed the requested accommodation. Therefore, the district court found that USPS was not hable for failure to reasonably accommodate and granted its motion for summary judgment.
 

 II.
 

 We review a grant of summary judgment
 
 de novo. Barnhart v. Pickrel, Schaeffer & Ebeling Co.,
 
 12 F.3d 1382, 1388 (6th Cir. 1993). A party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for that party.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the disputed issue need not be resolved conclusively in favor of the non-moving party, that party is required to present some significant
 
 *-409
 
 probative evidence which makes it necessary to resolve the parties’ differing versions of the dispute at trial.
 
 First National Bank of Arizona v. Cities Service Co.,
 
 891 U.S. 253, 288-89, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968).
 

 III.
 

 In the present case, plaintiff, in essence, alleges that summary judgment was inappropriate because there is a material issue of disputed fact.
 
 [5]
 
 He argues that because the AJ found in his favor, a reasonable juror could have found in his favor. He argues that the AJ’s decision indicates that reasonable minds could differ as to whether plaintiff needed an accommodation for his disability after he requested a Tour 2 position at AMF in January 1993 and made it clear that the request was made on the basis of his epilepsy.
 

 We do not agree. There is no disputed issue of material fact, because the AJ erred as a matter of law in finding that plaintiff had presented
 
 aprima facie
 
 case of handicap discrimination based on failure to accommodate. Specifically, plaintiff failed to establish that the requested accommodation was necessary in order for him to perform the essential functions of his job, which is one of the requirements needed to establish a
 
 prima facie
 
 case.
 

 The Rehabilitation Act of 1973, 29 U.S.C. § 701
 
 et seq.,
 
 is a program designed to assist and protect the rights of the handicapped. Title V of the Act prohibits federal agencies, federal contractors, and recipients of federal funds from discriminating against individuals with disabilities. Section 504 of the Act provides in pertinent part:
 

 No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
 

 29 U.S.C. § 794(a). In addition, section 501 of the Act requires federal employers, including USPS, “to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities.” 29 U.S.C. § 791(b).
 

 The EEOC has promulgated administrative regulations that define the duties of federal agencies under section 501, making clear that federal employers have an obligation to make reasonable accommodations for handicapped employees. The regulations state in relevant part:
 

 An agency shall make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified individual with handicaps unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.
 

 29 C.F.R. § 1614.203(c)(1). A “qualified individual with handicaps” is one “who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others....” 29 C.F.R. § 1614.203(a)(6).
 

 In order for a plaintiff to prevail on an allegation of handicap discrimination based on failure to accommodate, he must first establish a
 
 prima facie
 
 case by showing that: (1) he is an individual with a handicap as defined in 29 C.F.R. § 1614.203(a)(1); (2) he is qualified for the position as discussed in 29 U.S.C. § 1614.203(a)(6); (3) the agency was aware of his disability; (4) an accommodation was needed, i.e., a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation.
 
 See Kocsis v. Multi-Care Management, Inc.,
 
 97 F.3d 876, 882-83 (6th Cir. 1996). Once the plaintiff has presented a
 
 prima facie
 
 case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because
 
 *-408
 
 the accommodation would impose an undue hardship on the operation of its programs.
 
 Id.
 
 at 883. If the plaintiff fails to establish a
 
 prima facie
 
 ease, it is unnecessary to address the question of reasonable accommodation.
 
 Jasany v. United States Postal Service,
 
 755 F.2d 1244, 1250 (6th Cir.1985);
 
 Sisson v. Helms,
 
 751 F.2d 991, 993 (9th Cir.),
 
 cert. denied,
 
 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985);
 
 Daubert v. United States Postal Service,
 
 733 F.2d 1367, 1369-70 (10th Cir.1984);
 
 Pushkin v. Regents of University of Colorado,
 
 658 F.2d 1372, 1387 (10th Cir.1981).
 

 In the present case, we find that as a matter
 
 of
 
 law, plaintiff failed to establish a
 
 prima facie
 
 case of handicap discrimination because he did not fulfill part (4) of the requirements. Therefore, the AJ erred in proceeding to an analysis of whether USPS reasonably accommodated plaintiff. The burden never shifted to USPS to demonstrate that the requested “Tour 2 at AMF” accommodation imposed an undue hardship, because plaintiff faded to demonstrate a need for the requested accommodation. It is not disputed that plaintiff is an individual with a handicap as defined in 29 C.F.R. § 1614.203(a)(1). What is disputed is whether a Tour 2 shift at AMF was needed as a reasonable accommodation in order for plaintiff to perform the essential functions of his job pursuant to 29 C.F.R. § 1614.203(a)(6).
 

 The Final Agency Decision of USPS found that the medical evidence submitted by plaintiff in support of his request was insufficient to establish a need for the requested accommodation. The decision stated the following in this regard:
 
 [6]
 

 In support of his request for an accommodation, complainant submitted medical documentation from two of his physicians, Dr. Gary Fox, Neurologist, and Dr. F. Albert Olash, Jr., Internal Medicine. In his January 6, 1993 letter, Dr. Fox, stated in part:
 

 Since the seizure [complainant] has continued to work the seven to three shift and states that he feels better than at any time in the past fifteen years.... He states that now it is being considered to return him to the three to eleven job and change his place of work. Legally he can drive but I think that in the best interest of the patient it may be well for him to continue to work the day shift and continue his regular sleeping habits (emphasis added).
 

 Dr. Fox’s commentary on the “best interest of the patient” does not directly state to the Agency or provide medical evidence sufficiently relevant to establish that changing complainant’s hours of work and work location would cause a seizure to occur. Furthermore, ‘Dr. Fox’s letter is based on a mistaken belief that complainant was working strictly the day shift. As previously discussed, complainant, since June 8, 1992, was working a split shift, 3 days on day shift and 2 days on the evening shift. Thus, either complainant failed to truthfully convey his schedule to Dr. Fox or, in the alternative, Dr. Fox elected to omit such relevant information. Nevertheless, Dr. Fox’s letter does not substantiate complainant’s request for a Tour 2 position (day shift). At best, Dr. Fox’s letter may be construed as a request that complainant’s schedule be consistent in order that he continue his regular sleeping habits.
 

 On January 15, 1993, in support of complainant’s request for day work at the AMF, he provided additional medical documentation from Dr. Olash who opined:
 

 It has come to my attention that he [complainant] has been changed quite frequently from one capacity to another at work.... Because of his seizure he is not supposed to drive_ My recommendation would be that he continue in the capacity that he had previously (pri- or to this new change).
 

 It appears that Dr. Olash was under the impression that complainant’s “capacity” at work had been changed quite frequently. Assuming that Dr. Olash was referring to complainant’s schedule, the record indi
 
 *-407
 
 cates that complainant worked the same schedule for approximately seven (7) months (June 8, 1992 to January 8, 1993). The gravamen of Dr. Olash’s letter appears to be a recommendation to accommodate complainant by allowing him to work at the AMF due to his inability to drive. However, this recommendation based on the inability to drive is contrary-to complainant’s neurologist Dr. Fox who stated that “legally” complainant could drive. Thus, Dr. Olash’s letter fails to provide medical evidence sufficiently relevant to establish that changing complainant’s hours of work and work location would cause a seizure to occur.
 

 We agree with the analysis. Both Dr. Fox and Dr. Olash elected not to provide any medical documentation to establish that an assignment to the Tour 2 shift at AMF could help prevent a seizure from occurring. Both doctors’ recommendations were based on incorrect information, either that plaintiff had been working five days a week on a Tour 2 schedule or that there were frequent disruptive changes in his work schedule. Since June 1992, plaintiff had consistently been assigned to a split Tour 2-Tour 3 schedule without interruption. Moreover, plaintiffs own testimony indicated that a change in schedule would not disrupt his sleep patterns. Before the AJ, plaintiff admitted that when he was working the split shift, he went to bed at 11:30 each night regardless of whether he had worked on the day or evening shift, and that if he were assigned to the Tour 3 shift five evenings a week, it would be possible for him to continue to go to bed at 11:30 p.m. and maintain the same sleep schedule. He also admitted that no doctor told him not to work five days in a row on Tour 3, the evening shift.
 

 Furthermore, plaintiffs requested accommodation in January 1993 was not consistent with his prior requests. When he worked a split Tour 2-Tour 3 schedule, he did not allege that the change in shifts caused him any problems with his sleep patterns. In the fall of 1992, when he was asked to state his choices for a new position pursuant to the RIF, he indicated that he wanted either a Tour 2 or Tour 3 assignment at AMF. In other words, plaintiff wanted to stay at AMF, but at this time he did not indicate that a Tour 3 position would disrupt his sleep patterns. It was not until after he was denied a position at AMF that plaintiff decided to request a Tour 2 position on the basis of his alleged need to maintain regular sleep patterns. The record indicates, however, that the Tour 3 position at GMF provided a consistent schedule that would allow plaintiff to maintain the same sleep patterns. The record indicates that plaintiff worked a split Tom- 3 and Tour 2 shift prior to his request for a Tour 2 accommodation, that he had previously worked on Tour 3 at GMF five evenings a week without incident, and that from the time he returned to work after his seizure in March 1993, he has worked at GMF on Tour 3 without incident. Based on his employment record, there is, thus, nothing to indicate that his sleep patterns were altered and caused seizures whether he worked on Tour 2, on Tour 3, or on split Tour 2 and Tour 3 shifts.
 

 In regard to his request that he be given a position at AMF, which was closer to his home, the AJ determined that if plaintiff was unable to drive after a seizure, USPS was willing to provide transportation to GMF, and, therefore, a transfer to AMF was not needed. The record indicates that when plaintiff had the seizure in March 1993, his new GMF supervisor offered to drive him. His supervisor also changed one of his subordinates’ schedules so that plaintiff could travel with her. Thus, there is no evidence that plaintiff was unable to travel to work and perform the essential duties of his position unless he was located at AMF. To the extent that plaintiff may have been requesting the AMF location in order to avoid driving on an expressway, plaintiff conceded that he did not make USPS aware of this reason. If there was medical evidence that plaintiff needed to avoid driving.on an expressway, then it was incumbent upon him to set forth the evidence in opposition to defendant’s summary judgment motion, which he failed to do.
 
 See Brennan v. Township of Northville,
 
 78 F.3d 1152, 1156 (6th Cir.1996).
 

 As the court in
 
 Bento v. I.T.O. Corp. of Rhode Island,
 
 599 F.Supp. 731, 745 (D.R.I.
 
 *-406
 
 1984) stated, the nub of the Rehabilitation Act is that an employer must make “a reasonable, good-faith effort to adjust its legitimate needs to a handicapping condition” that requires a reasonable accommodation in order for the employee to perform the essential functions of the position. The Rehabilitation Act has never been interpreted to mandate preferential treatment of an employee simply because he is handicapped.
 
 Fedro v. Reno,
 
 21 F.3d 1391, 1395 (7th Cir.1994).
 

 The Rehabilitation Act does not impose a duty to provide every accommodation requested.
 
 See Jasany,
 
 755 F.2d at 1250 (plaintiff failed to establish a
 
 prima facie
 
 case of handicap discrimination because plaintiff did not show that his alleged impairment had any effect on his ability to carry out his duties at USPS). The plaintiff must first demonstrate that without the requested accommodation, he is unable to perform the essential functions of his job.
 
 See Johnson v. Shalala,
 
 991 F.2d 126, 128-29 (4th Cir.1993) (employer requested and received medical documentation that plaintiff required the requested work schedule as an accommodation for her narcolepsy),
 
 cert. denied,
 
 513 U.S. 806, 115 S.Ct. 52, 130 L.Ed.2d 12 (1994). The employer need only provide reasonable accommodations that make it possible for the disabled employee to perform the essential functions of his job.
 
 See Carter v. Bennett,
 
 840 F.2d 63, 67 (D.C.Cir.1988). In the present case, plaintiff failed to establish a
 
 prima facie
 
 case of handicap discrimination, because he failed to establish that he needed placement on Tour 2 at AMF in order to perform the essential duties of his position. Therefore, the burden of proof never shifted to USPS to prove that it could not reasonably accommodate plaintiff.
 

 To conclude, a plaintiff bears the initial burden of establishing a
 
 prima facie
 
 case of handicap discrimination and must produce sufficient evidence to make at least a facial showing that a reasonable accommodation is necessary.
 
 See Gardner v. Morris,
 
 752 F.2d 1271, 1280 (8th Cir.1985);
 
 Treadwell v. Alexander,
 
 707 F.2d 473, 478 (11th Cir.1983);
 
 Bey v. Bolger,
 
 540 F.Supp. 910, 924 (E.D.Pa.1982). In order for a plaintiff to prevail on an allegation based on failure to reasonably accommodate, he must establish that: (1) he is an individual with a handicap; (2) he is qualified for the position at issue; (3) the agency was aware of his disability; (4) an accommodation was needed, Le., a causal relationship existed between the disability and the request for accommodation; and (5) the agency failed to provide the necessary accommodation. In the present case, although plaintiff has demonstrated that he is a handicapped employee, that he can perform the essential functions of his job, and that on January 8, 1993, USPS was informed of his disability, plaintiff failed to present sufficient evidence demonstrating a need for the requested accommodation. Therefore, he failed as a matter of law to establish a
 
 prima facie
 
 case of handicap discrimination based on
 
 failure to
 
 reasonably accommodate. The district court’s grant of summary judgment to defendant was, therefore, appropriate. The judgment of the district court is hereby AFFIRMED.
 

 [1]
 

 . Plaintiff's claims of sex and race discrimination are not at issue in this appeal and will not be discussed.
 

 [2]
 

 . Plaintiff also applied for workers’ compensation during the period USPS was considering his request for a Tour 2 assignment at AMF, claiming he had seizures and high blood pressure as a result of his employment. The claim was denied on the basis that his alleged injuries did not result from his employment.
 

 [3]
 

 .The EEOC is the agency charged with enforcement of 29 U.S.C. § 701
 
 et seq.
 
 and must ensure that federal agencies, such as USPS, comply with the Act.
 

 [4]
 

 . The AJ found that plaintiff had not established a need for transfer to the AMF location, because after his March seizure, when plaintiff alleged he had driving restrictions, USPS provided him with transportation to GMF.
 

 [5]
 

 . On appeal, plaintiff contests only the district court's grant of summary judgment to defendant in regard to the Agency's denial of his request for a "Tour 2 at AMF” accommodation made on January 8, 1993. The December 1992 assignment, made before USPS was informed about plaintiff’s need for accommodation due to epilepsy, is not at issue in this appeal.
 

 [6]
 

 . This decision is part of the record although it was not mentioned in either brief or in the district court opinion.