In re Brian Douglas SCANLON, Debtor.

NASD Regulation, Inc., Plaintiff,

v.

Brian Douglas Scanlon,

and

Adriano Gonzalez, Trustee, Defendants.

Bankruptcy No. 98–34247–BCK–SHF.
Adversary No. 99–3078–BKC–SHF.

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Nov. 12, 1999.

Charles M. Tatelbaum, Naples, FL, Joshua Cohen, Stamford, CT, Stephen C. Hunt, Naples, FL, for NASD Regulation Inc.

Paul L. Orshan, Miami, FL, for Brian Douglas Scanlon.

Michael R. Bakst, West Palm Beach, FL, for Patricia Dzikowski.

### MEMORANDUM OF OPINION AND ORDER [1]

RANDOLPH BAXTER, Bankruptcy Judge.

NASD Regulation, Inc. (NASDR) moves for summary judgment pursuant to Rule 7056 Bankr.R. on its Amended Complaint against Brian Douglas Scanlon (the Debtor) and Adriano Gonzalez (the Trustee). Upon the conclusion of a duly noticed hearing and an examination of the record generally, the following factual findings and conclusions of law are rendered.

In its Amended Complaint for Declaratory Relief (the Complaint), NASDR seeks a determination that certain funds held in an escrow account are not estate funds pursuant to § 541 of the Bankruptcy Code [11 U.S.C. § 541]; are not subject to turnover pursuant to § 542; are not funds held by a custodian subject to recovery by the Trustee under § 543; are not avoidable preferential transfers pursuant to § 547; are not avoidable as fraudulent transfers pursuant to § 548 of the Code; and that the Trustee is not entitled to any relief on his counterclaim against NASDR.

On or about December 22, 1997, the Department of Enforcement of NASDR filed a disciplinary proceeding against the Debtor. At the time, the Debtor was a licensed securities dealer. Subsequently, the Debtor submitted an offer of settlement. That offer was accepted by the National Association of Securities Dealers (NASD), which entered its order of acceptance on June 17, 1998. The order of acceptance required the Debtor to deposit $650,000.00 into an escrow account as partial compliance with the terms and conditions of the NASD order. An amount of $650,000.00 was deposited in accordance with the NASD order. Whether those funds deposited were the Debtor's, and thereby estate funds under § 541, is a dispute raised by the Trustee.

1. Judge Randolph Baxter, U.S. Bankruptcy Judge, N.D. Ohio, sitting by designation.

NASDR asserts that the escrow account was funded by the Debtor's wife with a loan or gift from her mother, and the Debtor never possessed or controlled any of the $650,000.00 deposited in the escrow account. NASDR further asserts that the purpose of the escrow funds is to compensate aggrieved retail customers of the company with which the Debtor was affiliated at the time of NASDR's investigation of the Debtor.

As a result of the Debtor's voluntary bankruptcy filing, the escrowed funds have remained in tact, with no distributions having been made to anyone. Notwithstanding, NASDR maintains that those funds are not property of the Debtor's bankruptcy estate. It is with this deference for the Court's bankruptcy jurisdiction that NASDR commenced this adversary proceeding by filing its Amended Complaint for Declaratory Judgment against the Debtor and the Trustee.

The Debtor's response is that of support for NASDR's motion for summary judgment. The Trustee, however, contends that the $650,000.00 is estate property under § 541 of the Bankruptcy Code and is recoverable for the benefit of the Debtor's bankruptcy estate.

Under § 541 of the Bankruptcy Code, the following is noted:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property as of the commencement of the case.

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case .... 11 U.S.C. § 541(a)(1).

A motion for summary judgment is governed by Rule 7056 Bankr.R., which incorporates Rule 56. Fed.R.Civ.P. 56. A case may be disposed of by a motion for summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir.1993). A fact is material if it would affect the determination of the underlying action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A dispute over an issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the party against whom summary judgment is sought." See *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., ITT*, 139 F.3d 1396 (11th Cir. 1998). A material fact is genuine if no rational jury could find for the non-moving party. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993).

*Burden On Moving Party*

Summary judgment is appropriate, after sufficient time for discovery, if a party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element to the party's case. *In re Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir.1993). Under this test, the moving party may discharge its burden by "pointing out to the bankruptcy court ... that there is an absence of evidence to support the nonmoving party's case." *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 198 (6th Cir. BAP 1998), quoting *Hall v. Tollett*, 128 F.3d 418, 421–422 (6th Cir.1997); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir.1993) (moving party must show affirmatively the absence of a genuine issue of material fact, supported by credible evidence).

*Nonmoving Party's Burden*

Once a movant makes a properly supported motion, the burden shifts to the nonmovant to demonstrate the existence of a genuine dispute. *Fitzpatrick*, 2 F.3d at 1116 (11th Cir.1993). Under Rule 56(e), an adverse party may not rest upon the mere allegations or denials of the adverse

party's pleading, but instead, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific acts showing that there is a genuine issue for trial." *Celotex* at 324, 106 S.Ct. 2548; *Fitzpatrick*, 2 F.3d at 1116. Although all inferences must be drawn in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., ITT*, 139 F.3d 1396 (11th Cir.1998); *Fitzpatrick*, 2 F.3d at 1116. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could find for the nonmoving party. *Id.* To preclude summary judgment, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Fitzpatrick*, 2 F.3d at 1116; *Gaines v. Runyon*, 107 F.3d 1171, 1174–75 (6th Cir.1997).

Applying the above standards and authorities to the proceeding at bar, no genuine issue exists as to a material fact and, consequently, summary judgment is granted as a matter of law. The affidavits and deposition testimony support NASDR's contention that the $650,000.00 in question were never funds of the Debtor and, thusly, are not estate funds.

*Affidavit and Deposition Testimonies*

The Trustee relies on various deposition testimonies to support his contention that the subject funds are estate assets. An examination of those depositions, however, does not support that contention. The unrefuted deposition testimony of Karen Davis, the Debtor's mother-in-law, was offered by the Trustee. Her testimony revealed that, upon her daughter's (Suzanne's) request of her, she caused $650,000.00 to be wired into an escrow account at the Gersten–Savage law firm to pay the Debtor's fine (P. 13, L. 16).

That amount was a loan which was repaid in full to Karen Davis by the Debtor and his wife through a line of credit taken on the Debtor's home (P. 14, L. 1). There were no repayment conditions on the loan (P. 21, L. 16), and the funds were loaned from her personal bank account (P. 23, L. 3). The $650,000.00 she wired to the escrow account were totally her monies and were not funds of her daughter or of the Debtor (P. 66, L. 1–5). She and her husband never had any of their daughter's or the Debtor's funds. Quite specifically, she testified that her daughter and son-in-law (the Debtor) never gave her any money (P. 73, L. 9–10).

Karen Davis' deposition testimony in this regard was corroborated by her husband Daniel's deposition testimony. Certain funds (less than $650,000.00) that were transferred by their daughter, Suzanne, in 1996 to his wife in 1996 had no connection with the $650,000.00 his wife loaned Suzanne in 1998 to cover the Debtor's NASDR fine. (Depo., Daniel Davis, P. 44, L. 12). The six checks their daughter sent to them in 1996 were repayments on previous loans they made to her (Depo., Karen Davis, P. 70, L. 1–5). The $650,000.00 loaned by his wife to their daughter in 1998 has been repaid and those repaid monies have not been returned to either their daughter or to the Debtor. (Depo., Daniel Davis, P. 47, L. 8). Of equal significance was his testimony which revealed that the Debtor nor his wife (Suzanne) have transferred real or personal property to him or to his wife in the past four years (Id. P. 47, L. 22–25; P. 48, L. 1–3).

The deposition testimony of Leslie Case, legal counsel with the Gersten–Savage law firm also sheds light on whether the Debtor ever had possession or control of the $650,000.00 as of his bankruptcy petition filing date. As noted above, the funds that were placed in the Gersten–Savage escrow account did not come from the Debtor. There was no written escrow agreement between Gersten–Savage and the Debtor regarding the $650,000.00 fine

deposit (P. 11, L. 17). Also, no written consultancy agreement exists between Gersten–Savage and NASDR's retained independent escrow agent, John Lafond (P. 25, L. 1–19). None of the $650,000.00, plus accrued interest thereon, will be released by Gersten–Savage to any entity without directions and approval of the U.S. Bankruptcy Court or by consent of all parties involved (P. 28, L. 10). The office records of Gersten–Savage show that the $650,000.00 was transferred to Gersten–Savage's bank (Citi Bank) by Suzanne Scanlon (P. 8, L. 14). The $650,000.00, plus accrued interest, remains in that escrow account today (P. 9, L. 6). Had the Debtor not filed bankruptcy in August, 1998, he would have abided by the terms of the NASD Settlement Order and would have further remitted the $650,000.00 from the temporary Gersten–Savage escrow account not to the Debtor but, rather, to the independent escrow agent retained by NASDR (John Lafond).

The subject Settlement Agreement requires the Debtor to pay a $650,000.00 fine initially into a temporary escrow account at Gersten–Savage for ultimate deposit into a separate interest-bearing escrow account with its (NASDR's) independently retained escrow agent. This procedure was not an arrangement dictated by the Debtor. Rather, it was an express requirement of the Settlement Order which was drafted and issued by the NASDR. Jay Lippman, an NASDR representative, in his extensive deposition testimony fully explained the NASD's role and procedures in these types of matters. The fine levied against the Debtor was part of several sanctions levied by NASD against the Debtor as a result of NASD's disciplinary action against him. (Depo. Lippman, J., P. 64–6). The $650,000.00 fine is not NASD's but, rather, is to be used as a restitution fund to pay affected NASD customers wronged by the Debtor regarding ill-gotten gains the Debtor received in connection with unlawful and impermissible activities in which the Debtor engaged himself while employed by the Harriman Group in

1995. (Id., P. 64, L. 6; P. 66, L. 19; P. 118, L. 23). Lippman's deposition testimony confirmed that the escrow arrangement for the $650,000.00 was pursuant to NASDR instructions, as opposed to any orchestration by the Debtor. Indeed, he testified that placing those funds in the Gersten–Savage escrow account was only to be a temporary measure until an independent escrow account, free from the Debtor's law firm, could hold the funds until further notice (Id., P. 32, L. 1–25). Significantly, this testimony confirms that the total routing requirements for the $650,000.00 fine was both created and controlled by the NASDR and not the Debtor. At no time did the Debtor possess the $650,000.00, and the benefactors were the NASD customers whom he had wronged as opposed to himself. The NASDR never had any concern with Gersten–Savage serving as a temporary escrow agent in this matter, until the independent escrow agency could be established. The intervening, bankruptcy filing by the Debtor precluded the funds transfer to the independent escrow agent. (Id., P. 33, L. 2–9).

The Debtor's testimony and affidavit are unrefuted by affidavits or other evidence offered by the Trustee and show that the source of payment for the $650,000.00 fine was his mother-in-law, Karen Davis, and was not his funds. (Depo., Scanlon, B., P. 65, L. 12). He had no conversation with Karen Davis regarding this loan. (Id., P. 9, L. 22) but was aware that she wired the funds to his wife (Suzanne). (Id., P. 10, L. 4). Further, there exists no escrow agreement or arrangement between himself and Gersten–Savage regarding those funds (P. 11, L. 25), and he has never attempted to gain access to those funds from Gersten–Savage, as he understands they are not his funds. Lastly, Gersten–Savage informed his wife, as opposed to himself, once the NASDR required amount was placed into its escrow account.

Similarly, the Debtor's wife's deposition testimony conformed with her sworn affi-

davit, which was unrefuted by anything offered by the Trustee. The $650,000.00 used to pay the Debtor's fine came from her mother, Karen Davis, at her (Suzanne's) request. (Depo., Scanlon, S., P. 10, L. 12). It was a loan which she repaid in June of 1998 from a line of credit on their personal residence. (P. 12, L. 1). The funds for the loan came from her mother's personal assets (P. 13, L. 4) and did not come from any funds owned by her or the Debtor (P. 13, L. 12; and P. 66, L. 1–5). She took it upon herself to help her husband by asking her mother for the loan (P. 14, L. 13). She has never loaned monies to her parents (P. 14, L. 4). She directed where the $650,000.00 proceeds went once her mother approved the loan—not the Debtor (P. 34, L. 23). Lastly, her testimony revealed that she is the title owner of all of the residences owned by she and her husband and that she personally handles their financial matters (P. 55, L. 6). Nothing was submitted by the Trustee which refutes any of this testimony by the Debtor's wife, Suzanne Scanlon.

In summary, none of the Trustee's contentions of estate ownership of the $650,000.00 are supported by the record and arise to a level no greater than that of a theory. No evidence has been offered by the Trustee to refute the Debtor's and NASDR's assertion regarding ownership of the $650,000.00 which would characterize those funds as estate assets pursuant to § 541 of the Bankruptcy Code. As required under Rule 56(e), once the moving party seeking summary judgment has made a *prima facie* showing to support a summary judgment, it is incumbent upon the nonmoving party to present significant and probative evidence upon which a jury could find for the nonmoving party, notwithstanding that all inferences must be drawn in favor of the nonmoving party. See, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp., ITT*, 139 F.3d 1396 (11th Cir.1998). Herein, the Trustee

has failed to meet its corresponding burden under Rule 56(e).

The Trustee filed counterclaims in his Answer to NASDR's Amended Complaint for Declaratory Judgment. He counterclaimed for turnover of the $650,000.00 pursuant to 11 U.S.C. §§ 542 and 543. Alternatively, he counterclaimed to recover said amount as an alleged fraudulent transfer pursuant to 11 U.S.C. §§ 544 and 548, and as an alleged preferential transfer pursuant to 11 U.S.C. § 547. This Court having determined above that the subject funds are not estate assets as defined under 11 U.S.C. § 541, the Trustee's counterclaims for recovery are rendered moot. Further, as required under Rule 56(e), the Trustee proffered no affidavits or otherwise to support specific facts to show that a genuine issue exists for trial in these regards.

### Conclusion

Accordingly, the Motion for Summary Judgment is hereby granted. The Trustee's counterclaims are dismissed. Each party is to bear its respective costs.

IT IS SO ORDERED.