NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0249n.06

No. 23-1813

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jun 07, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CHERESE JOHNSON, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| LOUIS DeJOY, Postmaster General of the United States, | ) | OPINION |
| Defendant-Appellee. | ) | |

Before:  MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Cherese Johnson ("Johnson") started working at the United States Postal Service ("USPS") in 2005.  Later, she became a T-6 mail carrier, responsible for serving five different routes every workweek.  In 2010, Johnson sustained a knee injury that limited her ability to climb stairs and restricted the mail routes that she could complete.  In 2014, she had knee surgery, which eventually removed her ability to climb stairs altogether and impacted the number of hours of work she received.  In 2021, Johnson sued USPS, claiming that her supervisors had discriminated against her on the basis of her disability, failed to accommodate her disability, and retaliated against her for filing EEO complaints by routinely failing to give her a full eight hours of work per day.  USPS moved for summary judgment, which the district court granted.  We AFFIRM the district court's judgment.

## I. BACKGROUND

**A. Factual Background**

Johnson began working at USPS in July 2005 at the North End station in Detroit, and she became a full-time carrier in May 2013. R. 19-2 (Johnson Dep. at 8) (Page ID #168).[1] Johnson is a swing, or T-6, carrier, covering routes when the regular mail carrier has their day off, and therefore she has "a different route for each of [the] five days" that she works. *Id.* at 15–17, 40 (Page ID #170, 176). As a T-6 carrier technician, Johnson is expected to work for eight hours every day, "deliver[ing] mail on foot or by vehicle" on "not less than five letter routes" while the regularly assigned carrier is absent. R. 19-3 (Carrier Tech. Job Descript. at 1) (Page ID #192). All non-light-duty full-time carriers at USPS are "entitled to eight hours of work per day." R. 19-2 (Johnson Dep. at 11) (Page ID #169). The job description for a principal carrier also explicitly states that "[a]pplicant[s] must be physically able to perform efficiently the duties of the position," which includes delivering mail "in a prescribed area," carrying mail satchels weighing up to 35 pounds, and lifting up to 70 pounds. R. 19-3 (Carrier Tech. Job Descript. at 4–5) (Page ID #195–96).

In 2010, Johnson slipped and fell off her porch. R. 19-2 (Johnson Dep. at 32) (Page ID #174). The resulting knee injury restricted her to no more than three hours of climbing stairs per day. *Id.* at 29–30 (Page ID #173–74). To account for this limitation, Johnson sought and was

---

[1]Johnson also submitted a "declaration," which appears to be largely a signed version of her lawyer's response to USPS's motion for summary judgment, and which is unsworn but purportedly made under the penalty of perjury. *Compare* R. 24-6 (Johnson Decl.), *with* R. 21 (Pl.'s Resp. to Def.'s Mot. for Summ. J.). The district court noted that the declaration did not "conform to [Federal Rule of Civil Procedure] 56(c)(4)," but considered it to the extent that it did not conflict with Johnson's "prior sworn testimony or other evidence of record." *Johnson v. DeJoy*, No. 21-10930, 2023 WL 1452061, at *2 n.2 (E.D. Mich. Feb. 1, 2023). We follow the district court's approach when considering Johnson's appeal. *See Pollock v. Pollock*, 154 F.3d 601, 611–12 n.20 (6th Cir. 1998).

granted permission to go on temporary light duty. *Id.* at 30–31 (Page ID #174). As a result of her injury, Johnson "could only carry part[] of a route rather than the whole route." *Id.* at 32 (Page ID #174). In 2014, Johnson had knee surgery, which added to her physical restrictions. R. 24-6 (Johnson Decl. ¶ 3) (Page ID #573). When she returned to USPS, she requested "an accommodation of no climbing over 3 hours and no lifting over 15 pounds." *Id.* She did not have or request any limitations regarding her ability to walk on level ground. *Id.* In 2015, her restrictions "went down to one to two hours" of climbing stairs, and she remained limited to lifting only ten to twenty pounds. R. 19-2 (Johnson Dep. at 33) (Page ID #174).

Throughout her health complications, Johnson remained on light-duty status. *Id.* at 34 (Page ID #175). Because Johnson was carrying a smaller portion of her route(s), the rest of the workday hours needed to be made up performing tasks such as "[c]asing,[2] express mail, [and] collections." *Id.* at 35 (Page ID #175). Around 2016 or 2017, Johnson had "another knee scope," after which she was restricted from climbing stairs at all. *Id.* at 36 (Page ID #175). She was still able to do a whole route (provided it did not have stairs), case, collect outgoing mail from USPS boxes, deliver express mail, and organize mail for processing. *Id.* at 37–38 (Page ID #175–76).

The USPS workers at the North End station are represented by the National Association of Letter Carriers ("NALC"), and they have a collective bargaining agreement ("CBA"). *Id.* at 10 (Page ID #169). Johnson asserts that the CBA states that "management is supposed to 'make every effort' to find assignment[s] for all carriers that have disabilities." R. 24-6 (Johnson Decl. ¶ 11) (Page ID #574). The CBA also clarifies that "[l]ight duty assignments may be established from

---

[2]"Casing" involves organizing "[a]nything that's loose" in order to set the mail "up for [a] particular route." R. 19-2 (Johnson Dep. at 22) (Page ID #172).

part-time hours, to consist of 8 hours or less in a service day and 40 hours or less in a service week." R. 19-4 (CBA Art. 13, § 3(B), at 52) (Page ID #211). When assigning light-duty work, USPS supervisors must consider factors such as whether an assignment would be "to the detriment of any full-time regular on a scheduled assignment." *Id.* Art. 13, § 4(C), at 53 (Page ID #212).

Johnson believed that her supervisors, George Glover ("Glover"), Christopher Sparks ("Sparks"), and Leon McPherson ("McPherson"), were discriminating against her on account of her disability, and she asked NALC to file grievances against all three supervisors on her behalf, but the union did not do so. R. 24-6 (Johnson Decl. ¶ 45) (Page ID #583). Johnson instead submitted EEO complaints, claiming that she had been subject to "[p]hysical disability discrimination" and had been retaliated against because "Glover, Sparks[,] and McPherson were not giving [her] assignments that [she] knew existed . . . within [her] restrictions." *Id.* ¶ 12 (Page ID #574); *see* R. 19-10 (EEO Grievances) (Page ID #260); R. 19-12 (2015 EEO Compls.) (Page ID #264–69); R. 19-13 (2016 EEO Compls.) (Page ID #270–86). In response to Johnson's 2015 EEO complaint, Johnson asserts that Glover stated that the management team had "made every effort to balance required duties," that Johnson had "refused work offered to her," and that work had been distributed "in the most efficient manner possible." R. 24-6 (Johnson Decl. ¶ 13) (Page ID #575). As a result of the need for efficiency, Johnson alleges that Glover claimed that routes consisted of "6 1/2 to 7 hours of delivery time." *Id.*

In 2016, Glover was replaced by Cynthia Evans ("Evans") as the North End station manager. *Id.* ¶ 16 (Page ID #576). Johnson stated that under Evans she received an eight-hour route every morning, with "overtime and occasional penalty time," even when her "work restriction [had] increased to no stair climbing at all." *Id.* ¶¶ 19–21, 25 (Page ID #576–77) (internal

4

quotation marks omitted). According to Johnson, between 2014 and 2017, she worked eight-hour days approximately 70% of the time. R. 19-2 (Johnson Dep. at 43–44) (Page ID #177). However, between 2010 and 2014, she estimates that 95% of her workdays were eight-hour days, and that the percentage has increased back to around 90% since 2017. *Id.* at 43, 49 (Page ID #177, 178).

Johnson claims that Glover's, Sparks's, and McPherson's failure to give her work within her restrictions was "personal and retaliation" for her filing EEO complaints, R. 19-12 (2015 EEO Compls. at 1) (Page ID #264), and that there had been work available within her restrictions numerous times from 2014 to 2016 that her supervisors refused to give to her, *see, e.g.*, R. 19-13 (2016 EEO Compls. at 9, 10) (Page ID #278, 279); R. 24-6 (Johnson Decl. ¶ 8) (Page ID #574). Johnson asserts that within this timeframe, Glover, Sparks, and McPherson "created an abusive working environment around [her]." R. 24-6 (Johnson Decl. ¶ 9) (Page ID #574).

In 2019, an Administrative Judge ("AJ") considered Johnson's complaints that she had been discriminated against based on disability and/or retaliated against for filing EEO complaints in 2014 and 2015. R. 19-14 (AJ Dec. & Order at 2) (Page ID #288). The AJ granted USPS's motion for summary judgment on Johnson's claims. *Id.* at 4 (Page ID #290). The AJ concluded that Johnson had "accepted a temporary light duty job," and she therefore "was not entitled to or guaranteed" a certain amount of hours of work per day, although the AJ also found that Johnson had worked an average of more than eight hours per day. *Id.* at 3 (Page ID #289). Accordingly, Johnson had not "suffer[ed] an adverse action" and was unable to establish a prima facie case. *Id.*

## B. Procedural History

In 2021, Johnson sued the USPS, alleging four claims under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* (the "Rehabilitation Act"): (1) disability discrimination–disparate

treatment (Count I); (2) disability discrimination–failure to accommodate (Count II); (3) disability discrimination–failure to engage in an interactive process (Count III); and (4) disability discrimination–"hostile environment retaliation" (Count IV). R. 1 (Compl. at 15–19) (Page ID #15–19). USPS filed a motion for summary judgment, R. 19 (Def.'s Mot. for Summ. J.) (Page ID #133–63), to which Johnson responded, R. 24 (Pl.'s Resp. to Def.'s Mot. for Summ. J.) (Page ID #452–72).

The district court granted USPS's motion for summary judgment. *Johnson v. DeJoy*, No. 21-10930, 2023 WL 1452061, at *1 (E.D. Mich. Feb. 1, 2023). First, as to Johnson's disability-discrimination claims in Counts I and II, the district court found that there was "no genuine factual dispute concerning [Johnson's] inability to perform the essential functions of" a carrier technician. *Id.* at *6. The district court also found that Johnson had not sufficiently established a disparate-treatment claim and that she had not suggested a reasonable accommodation. *Id.* at *7–8. Next, the district court found that Johnson had failed to "establish[] a claim for failure to engage in the interactive process" with regard to Count III. *Id.* at *8. Lastly, the district court analyzed Johnson's hostile-environment retaliation claim, "considering both adverse employment action and hostile work environment." *Id.* at *9. The district found that Johnson had neither established a prima facie claim of retaliation nor shown sufficient evidence to demonstrate that USPS's proffered reason for her hours was pretextual. *Id.* at *10–11. In evaluating Johnson's hostile-environment claim, the district court found that "[t]he record [was] devoid of evidence of actions or an environment that a reasonable person would find hostile or abusive." *Id.* at *13.

Johnson filed a motion for reconsideration, R. 30 (Mot. for Recons.) (Page ID #631–40), which the district court denied, R. 31 (Order Den. Mot. for Recons.) (Page ID #772–73). Johnson timely appealed the district court's judgment.

## II. DISCUSSION

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 318 (6th Cir. 2019). "Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). In determining whether summary judgment is appropriate, we ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### B. Forfeiture

The district court found that Johnson "failed to establish a prima facie claim of" disparate treatment (Count I), *Johnson*, 2023 WL 1452061, at *8, and that she had "not established a claim for failure to engage in the interactive process" (Count III), *id.* Johnson does not develop either of these arguments on appeal. Accordingly, we view them as forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). We will address Johnson's failure-to-accommodate and retaliation claims respectively.

## C. Failure to Accommodate

Johnson claims that the district court erred in granting USPS's motion for summary judgment on her failure-to-accommodate claim. Appellant Br. at 29. The district court evaluated this claim under the burden-shifting *McDonnell Douglas* analysis and found that "there [was] no genuine factual dispute concerning [Johnson's] inability to perform the essential functions of [a] carrier." *Johnson*, 2023 WL 1452061, at *3–6. Because Johnson could not identify a reasonable accommodation that would permit her to perform all the essential functions of a mail carrier, the district court granted USPS's motion for summary judgment on this claim.

Under the Rehabilitation Act, in order to prevail on a failure-to-accommodate claim, a plaintiff must first make out a prima facie case that: (1) she has a disability; (2) "[s]he is qualified for the position"; (3) "the agency was aware of [her] disability"; (4) she needed an accommodation; and (5) "the agency failed to provide the necessary accommodation." *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004) (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175–76 (6th Cir. 1997)), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). An individual is "otherwise qualified" for a position if "[s]he could meet its requirements with a reasonable accommodation." *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 243 (6th Cir. 2019); *see also* 29 U.S.C. § 794(d); 42 U.S.C. § 12111(8). In determining whether a job function is essential to a particular position, we consider factors such as: "(1) the employer's judgment; (2) the written job description; (3) the amount of time spent performing the function; (4) the consequences of not requiring performance of the function; (5) the work experience of past incumbents of the position; and (6) the current work experience of incumbents in similar jobs." *Keith v. County of Oakland*, 703 F.3d 918, 925–26 (6th Cir. 2013).

In Johnson's case, the district court did not err in concluding that there was not a genuine dispute of material fact regarding her ability to perform the carrier route. The job description for a carrier technician states that employees must be able to complete "not less than five letter routes" and "[s]erve[] any route in [her] group during absence of the regular carrier." R. 19-3 (Carrier Tech. Job Descrip. at 1) (Page ID #192). It also states that carrier technicians "[m]ay be required to carry mail weighing up to 35 pounds . . . and to load or unload container[s] of mail weighing up to 70 pounds." *Id.* at 5 (Page ID #196). In her deposition, Johnson admitted that she was limited to lifting "10 to 20 pounds." R. 19-2 (Johnson Dep. at 33) (Page ID #174). She also agreed that being on light duty meant that she "can't perform all the duties of a carrier." *Id.* at 31 (Page ID #174).

The district court then evaluated whether Johnson could demonstrate that there existed a reasonable accommodation that would allow her to perform all the tasks of a mail carrier and concluded that she had not done so. *Johnson*, 2023 WL 1452061, at *6–7. In reaching this conclusion, the district court determined that Johnson's "request to be on light-duty tasks" and her suggestion that she be assigned to only stairless routes "without providing evidence of the availability of the same" did not constitute a request for "reasonable accommodation[s]." *Id.* at *7.

In her deposition, Johnson identified four different routes that she believed her restrictions would allow her to do. R. 19-2 (Johnson Dep. at 39) (Page ID #176). Her T-6 status, though, requires her to do at least five routes in her workweek, standing in for each route's regular carrier on their day off. Johnson identified five other individuals that, to her knowledge, were also on light-duty status within the relevant timeframe of 2014 to 2017. R. 19-2 (Johnson Dep. at 47)

(Page ID #178). To Johnson's knowledge, all these individuals also had restrictions on climbing stairs or otherwise carrying mail, but Johnson did not know how many hours each of them worked. *Id.* at 47–48 (Page ID #178). Other than assigning Johnson to routes that required little to no stairs, which she does not show are sufficiently available and which would impact the other light-duty employees' hours distribution, Johnson does not identify other accommodations that could account for her inability to complete full routes, a "fundamental job dut[y]" of a carrier technician. *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004). Because Johnson has not shown that there is a genuine dispute of material fact regarding reasonable accommodations, we affirm the district court's disposition of this claim.

## D. Retaliation

The district court found that Johnson had not established a prima facie case that Glover, Sparks, and McPherson had retaliated against her either on an adverse-employment-action theory or a hostile-environment theory. *Johnson*, 2023 WL 1452061, at *9–13. On appeal, Johnson claims that a reasonable jury could conclude that Glover, Sparks, and McPherson had taken adverse employment actions against her because she had filed EEO complaints, by "exaggerate-[ing] the severity of [her] disability" and by failing to assign her to routes that involved little to no stair climbing. Appellant Br. at 26.

As a preliminary matter, Johnson claims that her "declaration" creates a genuine dispute of material fact as to whether Glover, Sparks, and McPherson took adverse action against her, and that the district court erred in disregarding it. Appellant Br. at 27–29. The "declaration" in question appears to be a signed, but unsworn, version of her counsel's response to USPS's motion for summary judgment. R. 24-6 (Johnson Decl. at 13) (Page ID #585). The district court noted

10

that there was also sworn testimony in the form of Johnson's deposition, which was taken before Johnson submitted her declaration and which contradicted parts of that declaration. *Johnson*, 2023 WL 1452061, at *12. Unsworn declarations like Johnson's can "substitute for a conventional affidavit," provided that "the statement[s] contained in the declaration [are] made under penalty of perjury, certified as true and correct, dated, and signed." *See Pollock v. Pollock*, 154 F.3d 601, 611–12 n.20 (6th Cir. 1998); *see also* 28 U.S.C. § 1746. However, parties cannot create genuine issues of material fact simply by filing a declaration that "essentially contradicts" their earlier testimony. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006). Because Johnson gave her deposition before she filed the declaration, the district court did not err in considering her declaration only to the extent that the declaration did not contradict the deposition.

Johnson claims that the district court erred in finding that she had not sufficiently demonstrated that her supervisors took adverse action against her. Appellant Br. at 26. The district court determined that Johnson had not established a prima facie case of retaliation because she did not receive full eight-hour workdays before she filed EEO complaints and because she had "not shown evidence of knowledge or causation." *Johnson*, 2023 WL 1452061, at *10–11. Further, the district court reasoned that even if Johnson had made out her prima facie case, she had "fail[ed] to demonstrate that [USPS's] reason for giving her less than 8 hours of work was pretext." *Id.* at *11.

Retaliation claims by federal employees alleging disability-based discrimination are governed by the Rehabilitation Act. *See Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 578 (6th Cir. 2022). When the plaintiff does not show direct evidence of retaliation, we use the *McDonnell Douglas* burden-shifting framework. *Id.* at 587. To make out her prima facie case,

Johnson must show that (1) she "engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse action." *Id.* (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288) (6th Cir. 2012)) (alterations in original); *see also Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act retaliation claim). If Johnson can make out her prima facie case, the burden shifts to USPS to proffer a nondiscriminatory reason for the adverse action. *See Bledsoe*, 42 F.4th at 587. If it satisfies its burden, then Johnson must demonstrate that USPS's proffered reason is pretextual. *Id.*

We will assume that Johnson satisfied the requirements of a prima facie case of retaliation. We conclude, however, that Johnson has not demonstrated that USPS's proffered explanation for her reduced hours is pretextual. USPS stated that it must balance the needs of all employees, including others who are on light duty, while ensuring that the mail is delivered in a timely and efficient manner. As a result, Johnson received at least some workdays that were fewer than eight hours long. Because these bases are a sufficient nondiscriminatory reason for USPS's giving Johnson shorter workdays, Johnson must show that they are pretextual by demonstrating that they: "(1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) w[ere] insufficient to warrant" her lack of full eight-hour workdays. *Id.* at 581 (quoting *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 421 (6th Cir. 2021)) (alteration in original).

On appeal, Johnson claims that Glover, Sparks, and McPherson were "singl[ing] [her] out for denying [her] work [within] [her] restrictions." Appellant Br. at 29. She does not, however, advance any evidence or argument in her briefing as to why USPS's proffered explanations are

12

pretextual.[3] *Cf. Bledsoe*, 42 F.4th at 581–82. Although she cites her declaration for her assertion that there "were a lot of route assignments that were within [her] restrictions" that Glover, Sparks, and McPherson would not assign to her, she stated in her deposition that there were, at most, four such routes. Appellant Br. at 29. And she does not explain why USPS would not need to allocate those routes among all the light-duty carriers. Johnson's brief on appeal contains nothing else that would support a conclusion that her reduction in hours was actually motivated by her filing EEO complaints or that USPS's professed need to allocate hours among all light-duty employees in an efficient manner is baseless or insufficient. Accordingly, Johnson has not sufficiently established that a reasonable juror could find that Glover's, Sparks's, and McPherson's proffered reason for assigning Johnson to fewer than eight hours of work per day was pretextual.

The district court also analyzed Johnson's retaliation claim under a hostile-work-environment theory. In order to demonstrate that she was subject to a hostile work environment, Johnson must show that: (1) she has a disability; (2) "she was subjected to unwelcomed harassment; (3) the harassment was based on [her disability]; (4) the harassment created a hostile work environment; and (5) employer liability." *See Wyatt*, 999 F.3d at 411 (quoting *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009)); *Hiler v. Brown*, 177 F.3d 542, 545 (6th Cir. 1999) (explaining that an "aggrieved federal employee is entitled to the 'remedies, procedures, and rights' set forth in Title VII of the Civil Rights Act" (citation omitted)); *see also Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023) (order). We follow the familiar *McDonnell*

---

[3]On appeal, Johnson points to her wage fluctuations between 2013 and 2019 and an "Index" of similarly situated carriers' route assignments. Appellant Br. at 12–14, 26. She did not introduce these pieces of evidence until her motion for reconsideration. In denying Johnson's motion for reconsideration, the district court stated that the facts and "corresponding arguments" were "neither new nor previously unavailable." R. 31 (Op. & Order Den. Pl.'s Mot. for Recons. at 2) (Page ID #773). We agree with the district court and do not consider this evidence on appeal. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331–32 (6th Cir. 2009).

*Douglas* burden-shifting analysis when considering hostile-work-environment claims. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

The district court found that "[t]he record [was] devoid of evidence of actions or an environment that a reasonable person would find hostile or abusive." *Johnson*, 2023 WL 1452061, at *13. In both Johnson's sworn deposition and unsworn declaration, she made general statements that "all of" her supervisors were harassing her by "[n]ot allowing [her] to work." R. 19-2 (Johnson Dep. at 64–65) (Page ID #182); *see* R. 24-6 (Johnson Decl. ¶ 16–17) (Page ID #576). She does not offer any other evidence regarding actions taken by Glover, Sparks, or McPherson that a reasonable person would consider "hostile or abusive." Because "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment," we hold that the district court did not err in finding that Johnson had not sufficiently alleged that her supervisors had created a hostile work environment to retaliate against her for filing EEO complaints. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

## III. CONCLUSION

We AFFIRM the district court's judgment.