NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0725n.06
Filed: August 18, 2005

No. 03-6674

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WANDA GERTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | On Appeal from the United |
| | ) | States District Court for the |
| v. | ) | Eastern District of Kentucky |
| | ) | |
| VERIZON SOUTH INC., | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |

Before: COLE and CLAY, Circuit Judges; and HOOD, District Judge.[*]

**HOOD, DENISE PAGE, District Judge.** Plaintiff-Appellant Wanda Gerton appeals the

district court's order granting summary judgment in favor of Defendant-Appellee Verizon South,

Inc., a wholly-owned indirect subsidiary of Verizon Communications Inc. ("Verizon") on Gerton's

disability discrimination claim. The district court found that Gerton was not disabled, and, even if

Gerton were disabled, Verizon provided a reasonable accommodation to Gerton. For the reasons

set forth below, we affirm the district court's decision.

**I.**

Gerton began working for General Telephone and Electric Corporation ("GTE") in 1975, as

an hourly Directory Assistance Operator. GTE later merged with Bell Atlantic Corporation to form

---

* The Honorable Denise Page Hood, United States District Judge for the Eastern District of
Michigan, sitting by designation.

Verizon. Gerton worked as an operator for 26 years, at the company's Lexington, Kentucky Operator Center. The Operator Center was divided into two departments: Directory Assistance ("DA") and Toll Operations. DA Operators find telephone numbers by typing in names and addresses on a full keyboard computer, whereas Toll Operators handle collect calls by typing in the numbers using the computer number pad. During her career, Gerton worked as both a DA and Toll Operator.

In November of 2000, Gerton was diagnosed with "carpal tunnel issues" but could still perform her job as a DA Operator. (J.A. 402). On March 19, 2001, her right arm started tingling, became numb, and "just [went] completely out." (J.A. 403) The next day, March 20, 2001, Verizon sent Gerton to MedWorks, Verizon's medical provider for employees with work related injuries. (J.A. 406) Gerton was told by her supervisor, Barbara Anderson, that Gerton could not go to her primary physician. (J.A. 405, 407) She was seen at MedWorks by Beth Jones, a Physician's Assistant. Gerton was diagnosed with bilateral carpal tunnel syndrome, right hand greater than the left hand. (J.A. 490, 492) Jones approved Gerton to return to work with the following restrictions: a 10 pound weight restriction; no use of right hand; a 5 minute break every hour; and change "to toll for now (off DA)." (J.A. 492)[1] Gerton brought her restrictions to work that day. Anderson told Gerton that she would not be transferred to Toll but to work the DA Operator position with only one hand, with hourly breaks. (J.A. 408, 417) Anderson called MedWorks for more information regarding Gerton's restrictions and to see how long the restrictions were to last. (J.A. 494)

On March 23, 2001, Gerton returned to MedWorks and saw Marguerite Mueller, M.D. (J.A.

---

[1]It appears the form outlining restrictions was signed by both Beth Jones and Dr. Marguerite Mueller.

493-94) Dr. Mueller referred Gerton to a specialist, Dr. Einbecker, for an appointment on May 10, 2001. In the meantime, Dr. Mueller approved Gerton to return to work, with the following restrictions: a 10 pound weight restriction; no use of right hand; and a 5 to 10 minute break every hour, until cleared by Dr. Einbecker. (J.A. 491) These restrictions did not require that Gerton be transferred to Toll Operations.

Gerton returned to MedWorks on March 29, 2001 and was seen by Dr. Mueller. (J.A. 492) Gerton was experiencing increasing pain in her left hand as a result of the one-handed duty restriction. (J.A. 425) Dr. Mueller diagnosed Gerton with bilateral carpal tunnel syndrome, right greater than left, and chronic tendonitis. (J.A. 492) Dr. Mueller's examination found that Gerton was "intact to light touch on the left." (J.A. 496) Gerton was returned to work with restrictions of 5 pounds, one-handed duty and 10 minute stretch breaks every hour. (J.A. 492) Dr. Mueller's notes indicate that although Gerton should continue with single-handed duty, she may have to alternate her hands. (J.A. 496)

In late April 2001, Gerton was temporarily transferred to Toll, which she had requested as an accommodation. (J.A. 186-87, 410) Gerton was able to perform her duties with one hand while working in Toll Operations. (J.A. 187)

Verizon contends that one of its supervisors, Judy Perkins, gave Gerton an ADA Accommodation Request Form at Gerton's request on July 11, 2001. (J.A. 179-80) Gerton does not recall if she received the form. (J.A. 191) Perkins sent an e-mail to Lexington Operator Center management on July 13, 2001 explaining that Gerton had requested an ADA accommodation to remain in Toll and asking that Gerton be left in the temporary Toll assignment until a decision from the ADA group was received. (J.A. 569) Gerton had not submitted supporting documents and, on

August 14, 2001, Perkins sent an e-mail to Lexington Operator Center management asking if Gerton should be moved back to her DA position. (J.A. 302) On August 22, 2001, Perkins provided Gerton with another Job Modification Form instructing Gerton to forward the completed form and supporting documents to the Absence Management Department within one week. (J.A. 296, 302) Gerton submitted the form to her personal physician, W. Travis Lawson, M.D. (J.A. 262) As of September 4, 2001, Verizon had still not received the required form and documentation. (J.A. 302)

On September 10, 2001, Gerton was transferred back to DA because Verizon had not received the form and supporting medical documents. (J.A. 64, 144, 187, 201-02, 296) Anderson told Gerton that because her condition was not work-related, she would have to go back to DA. (J.A. 188) At that time, Gerton was given an information booklet about the ADA. (J.A. 189-90) Gerton claims that Verizon never told her that it was moving her back to DA because the medical documentation of her condition was insufficient. (J.A. 438) Cynthia Reber, a nurse for Verizon's Absence Management Group, received the Job Modification Form signed by Gerton's physician on September 10 but with no records to substantiate the request. (J.A. 500) After Gerton called her physician's office on the afternoon of September 10, 2001, the signed Job Modification Form and medical documentation was faxed to Verizon's Absence Management Department. (J.A. 147, 192, 199-200, 262, 313, 316) Unaware that the records had been faxed to Verizon on September 10, 2001, Perkins e-mailed Reber on September 12, 2001 indicating that due to the chaos of September 11, she was unable to contact Gerton to advise her that her medical records had not been received and gave Gerton an extension until September 21, 2001. (J.A. 501)

On September 13, 2001, William Kammeyer, M.D., a physician retained by Verizon, reviewed the paperwork received by Verizon from Gerton's personal physician, Dr. Lawson, and

4

conferred with Dr. Lawson about Gerton's wrist condition. (J.A. 313, 319) Dr. Kammeyer thereafter recommended to Reber that Gerton's accommodation request be granted. (J.A. 313, 319) Reber forwarded to Verizon's ADA Group the Absence Management Department's recommendation that the request be granted. (J.A. 313, 323) The Verizon ADA Group processed Gerton's accommodation request and notified Perkins on September 20, 2001 that Gerton's request for permanent assignment to Toll had been approved as an accommodation of her right wrist carpal tunnel syndrome. (J.A. 296, 306) Perkins notified Gerton's supervisor on September 21, 2001 that the permanent transfer had been approved. (J.A. 296)

Gerton claims that she worked on September 21, but was never told that her accommodation request to be assigned permanently to Toll had been granted. (J.A. 446) The last day Gerton was at work was on September 21, when she "just couldn't bear it anymore." (J.A. 448, 451) Gerton claims her "hand wouldn't do it." (J.A. 451) Gerton was scheduled to begin her permanent assignment to the Toll Department effective September 25, 2001. (J.A. 65, 296) Gerton did not report for work on September 25, 2001, and did not report thereafter. (J.A. 452) Prior to September 10, Gerton felt that she was capable of doing the Toll job. (J.A. 156) Gerton claims that her left hand worsened between September 10 and September 25 to such an extent that she could no longer perform either of the DA or Toll Operator positions. (J.A. 440)

Wanda Corman, a Toll Department Supervisor, called Gerton at home while she was off from work to let her know that she had been transferred to Toll. (J.A. 142) Gerton did not return to work to do the Toll job because she could no longer perform the Toll job. (J.A. 156) Gerton remained off work on paid sick leave, and, after her paid sick leave ran out, remained on personal leave until June 14, 2002, when her personal leave ran out. (J.A. 267) Based on the Personal Leave

5

of Absence policy, the effective date of her termination was December 15, 2001, the last day Gerton was paid. (J.A. 267)

On May, 22, 2002, Gerton filed a complaint in the Circuit Court of Fayette County, Kentucky, naming Verizon and Perkins as defendants. Gerton claimed Verizon discriminated against her due to a disability, in violation of Kentucky's Civil Rights Act, Ky. Rev. Stat. § 344 *et seq.* Against Perkins, Gerton claimed intentional infliction of emotional distress. Defendants removed the matter to the Eastern District of Kentucky, stating that the district court had subject matter jurisdiction because Perkins had been fraudulently joined in order to avoid subject matter jurisdiction by the federal courts. Gerton filed a motion to remand which the district court denied, finding that Gerton failed to state a cognizable intentional infliction of emotional distress claim under Kentucky law against Perkins. The parties thereafter stipulated to dismiss the intentional infliction of emotional distress claim against Perkins, with prejudice. Verizon filed a motion for summary judgment on the remaining disability discrimination claim, which the district court granted. Gerton timely filed a notice of appeal.

## II.

### A. Standard of Review

A district court's order granting summary judgment is reviewed *de novo*. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 581 (6th Cir. 2001); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). Fed. R. Civ. P. 56(c) provides that summary judgment be entered only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

6

91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if the "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed. 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## B.      Americans with Disabilities Act

### 1.      *Prima Facie* Case

On appeal, Gerton claims the district court erred in granting summary judgment because she has presented sufficient evidence that her disability substantially limited a major life activity and Verizon failed to reasonably accommodate her wrist condition during two time periods, from March 19, 2001 through April 26, 2001, and, from September 10, 2001 until September 25, 2001. (Appellant's Brief, p. 26) Gerton does not challenge the district court's ruling that, after September 25, 2001, Gerton failed to demonstrate a viable claim of disability discrimination based on Gerton's inability to use either hand, because Gerton did not request any specific accommodation for work

7

without using either hand.

Gerton claims Verizon violated the Kentucky's Civil Rights Act, Ky. Rev. Stat. § 344 *et seq.,* in failing to accommodate her disability. Because the language of the Kentucky Civil Rights Act mirrors the language of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.,* ADA jurisprudence may be relied upon to analyze disability discrimination claims brought under Kentucky Law. *See Brohm v. JH Properties, Inc.,* 149 F.3d 517, 520 (6th Cir. 1998).

The ADA requires employers to provide "reasonable accommodations to the known physical or mental limitation of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). In order for Gerton to prevail on an allegation of discrimination by way of failure to accommodate, she must establish a *prima facie* case by showing that: (1) she is disabled; (2) she is otherwise qualified for the position; (3) her employer was aware of her disability; (4) an accommodation was needed, in that a causal relationship existed between the disability and the request for accommodation; and, (5) the employer failed to provide the necessary accommodation. *Gaines v. Runyon,* 107 F.3d 1171, 1175 (6th Cir.1997) (quoting *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 882-83 (6th Cir.1996)). "Once the plaintiff has presented a *prima facie* case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs." *Gaines,* 107 F.3d at 1176. "If the plaintiff fails to establish a *prima facie* case, it is unnecessary to address the question of reasonable accommodation." *Id.* (citing *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985) (citations omitted)).

Proof of a disability is a threshold requirement to prove a violation of the ADA. *Burns v.*

*Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253 (6th Cir. 2000). A disability, with respect to an individual, is defined within the ADA as "a physical or mental *impairment* that *substantially limits* one or more of the *major life activities* of such individual." 42 U.S.C. § 12102(2)(A) (italics added). "Merely having an 'impairment' does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed. 615 (2002) (internal quotations added). "Substantially limits" has been suggested to mean "considerable" or to "a large degree." *Id.* at 196. "Major life activities" refers to those activities that are of central importance to daily life. *Id.* at 197. Although there is no exhaustive list of activities, the Supreme Court has cited to the Rehabilitation Act regulations, which defines major life activities to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); *Williams*, 534 U.S. at 195. These terms must be interpreted strictly to create a demanding standard for qualifying as disabled. *Id.* The Act requires the existence of a disability to be determined on a case-by-case manner. *Id.* at 198; 42 U.S.C. § 12101(2).

The parties do not dispute that Gerton's wrist condition qualifies as a physical "impairment" under the statute. Gerton argues on appeal that the impairment is a "disability" because it substantially limits her major life activities of lifting, performing manual tasks and working. We address each activity below.

## 2. Lifting

The Equal Employment Opportunity Commission's Interpretive Guidance specifically includes "lifting" as a major life activity. 29 C.F.R. pt. 1630, App. § 1630.2(i); *see Penny v. UPS*, 128 F.3d 408, 414 (6th Cir. 1997); *see also, Mahon v. Crowell,* 295 F.3d 585, 591 (6th Cir. 2002).

9

Gerton argues that because a Verizon doctor restricted her from lifting more than 10 lbs. (later 5 lbs.), this is evidence of the "employer's" state of mind that the employer "regarded" Gerton as disabled and that she is disabled since "lifting" is a major life activity, citing *Ross v. Campbell Soup Co.,* 237 F.3d 701 (6th Cir. 2001)[2] and *Hayes v. United Parcel Service,* 17 Fed.Appx. 317 (6th Cir. 2001) (unpublished). (Appellant's Br., pp. 17-18)

Gerton analogizes her claim involving "lifting" to a case involving "sitting." She cites *Hayes*, an unpublished decision, which involved an individual who claimed that his back injury rendered him unable to sit, where "sitting" is a major life activity. *Hayes,* 17 Fed.Appx. at 320. The district court ruled that the plaintiff was required to compare his ability to sit with the average person's ability to sit and that he had failed to provide such evidence. The plaintiff in *Hayes* presented evidence that he participated in an occupation readiness program for four months where he was evaluated and his sitting capability was measured at 20 or 25 minutes. *Id.* at 320. On appeal, we determined that the plaintiff was not required to present evidence comparing the average person's ability to sit with his own ability to sit, stating, "[c]ommon sense and life experiences will permit finders of fact to determine whether someone who cannot sit for more than this period of time is significantly restricted as compared to the average person." *Id.* at 321. Gerton argues that because she has presented evidence that she was restricted at work from using her right hand and lifting not more than 5 lbs., she is also unable to perform any lifting activities in her daily life

[2]Although Gerton raised the major life activity of "lifting" in her brief before the district court, Gerton did not raise the "regarding as" argument below. This court need not address arguments not presented to the district court. Fed. R. App. 10(a); *United States v. Bonds,* 12 F.3d 540, 552 (6th Cir. 1993). We note *Ross* addressed the issue of the "regarded as" theory under the ADA which directs the courts to look to the state of mind of the employer against whom a plaintiff makes a claim. *Ross*, 237 F.3d at 706. *Ross* will not be considered since the issue was not raised below.

outside work and is therefore disabled based on the major life activity of "lifting."

*Hayes* is distinguishable. Unlike *Hayes*, Gerton did not submit any evidence which measured her inability to lift at work, other than Dr. Mueller's restrictions not to lift 5 or 10 lbs. Dr. Mueller restricted Gerton to lifting 10 lbs., and later, 5 lbs., between March 20 and 29, 2001. (J.A. 490-96) The medical records do not show that she was unable to lift more than 5 or 10 lbs., nor do they show that she was required to demonstrate her ability to lift. (J.A. 490-96)

Even if *Hayes* was applicable, that decision was issued before the Supreme Court's opinion in *Williams*. In the context of the major life activity of performing "manual tasks," "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *See Williams,* 534 U.S. at 200-01; *see also, Equal Opportunity Employment Comm'n v. Daimler Chrysler Corp.,* 111 Fed. Appx. 394, 399 (6th Cir. 2004) (unpublished opinion). Gerton points to no evidence that her impairment substantially limited her ability to lift in her daily life outside work. Even if Gerton was unable to lift more than 5 or 10 lbs., she has not presented any evidence to show that the inability to lift this amount substantially limits her ability to lift anything else she requires in her daily life outside work. Gerton has not submitted sufficient evidence to raise a genuine issue of material fact that her impairment limits her major life activity of lifting.

### 3. Manual Tasks

"When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Williams,* 534 U.S. at 200-01. "It is insufficient for individuals attempting to prove disability status

11

under this test to merely submit evidence of a medical diagnosis of an impairment." *Id.* at 198. In *Williams*, the plaintiff was diagnosed with carpal tunnel syndrome, and, due to her impairment, she could not perform "repetitive work with hands and arms extended at or above shoulder levels for extended periods of time." *Williams,* 534 U.S. at 201 (quotation omitted). Even though the plaintiff's impairment in *Williams* caused her "to avoid sweeping, to quit dancing, to occasionally seek help dressing, and to reduce how often she plays with her children, gardens, and drives long distances ... these changes in her life did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives that they establish a manual task disability as a matter of law." *Id.* at 202.

Gerton argues that because of the nature of her impairment and her work restriction that she cannot use the right hand and can only lift 5 lbs. with her left hand, one can infer a broader limitation on the major life activity of performing manual tasks, such as the inability to care for herself, or to do all of the variety of tasks central to most people's daily lives, that require the use of two hands. (Appellant's Br., p. 21) As the Supreme Court noted, the ADA did not intend to allow "everyone with a physical impairment that precluded the performance of some isolated, unimportant, or particularly difficult manual task to qualify as disabled." *Williams,* 534 U.S. at 197. Other than by inference, Gerton points to no evidence that she was unable to care for herself or to perform any household tasks or any activities that were of central importance to her daily life in March 2001 or September 2001. Gerton has not submitted any evidence to raise a genuine issue of material fact that her impairment substantially limits her ability to perform manual tasks in her daily life outside work.

**4.** **Working**

Because Gerton is unable to show that her impairment substantially limits her major life activities of lifting and manual tasks, we turn to her claim that she is substantially limited from the major life activity of working.

The major life activity of "working" has been treated as a residual category resorted to only when a complainant cannot show she is substantially impaired in any other, more concrete major life activity. *Mahon,* 295 F.3d at 590 (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). An individual is substantially limited in the major life activity of working if the claimant is precluded from more than one type of job, a specialized job, or a particular job of choice. *Mahon*, 295 F.3d at 591 (citing *Sutton,* 527 U.S. at 492). If jobs utilizing an individual's skills are available, one is not precluded from a substantial class of jobs. *Id.* In order to show that a claimant is precluded from a substantial class or broad range of jobs, courts must compare the claimant's access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity. *Id.*

Gerton claims Verizon failed to accommodate her on two occasions, after March 19, 2001, and, after September 10, 2001. The question then is whether Gerton was disabled on March 19 and September 10.[3] Other than the diagnosis on March 20, 23, and 29, 2001, indicating that Gerton had

---

[3]There is evidence on the record which may raise a genuine issue of material fact as to whether Gerton was disabled *after* she failed to return to work on September 25, 2001. (*See* January 13, 2003 Opinion, Order and Award by Kentucky's Department of Workers Claims and Gary A. Shaw's April 28, 2003 Evaluation; J.A. 513-521) Gerton does not challenge on appeal the district court's ruling that she could not prevail on a disability claim after September 25, 2001. Although the Opinion and Evaluation note Gerton was disabled, there is no determination in the Opinion and Evaluation that Gerton was disabled on March 19 and September 10, 2001. Even if this evidence raised a genuine issue of material fact regarding Gerton's disability on March 19 and September 10, 2001, Gerton failed to show that Verizon did not reasonably

13

carpal tunnel syndrome on her right hand, Gerton has not presented any evidence that she was unable to perform a substantial class or a broad range of jobs in various classes. Gerton specifically admits she was able to perform the Toll Operator position, requested such a transfer, and, was performing fine as a Toll Operator with one hand. (J.A. 186-87, 410) Gerton has only claimed that she was unable to perform the DA Operator position. Even though Gerton continued to perform the DA Operator position from March 19, 2001 through April 26, 2001, she was able to perform the duties of that position, by using her left hand. (J.A. 412) Gerton is unable to show that she was disabled from working on March 19, 2001 because she has not shown that she did not have the ability to perform a substantial class or broad range of jobs.

As to whether Gerton was disabled on September 10, 2001, Gerton admits that she was working "fine" as a Toll Operator with one hand. (J.A. 187) Gerton was still able to perform the DA Operator position until her last day at work, September 21, 2001. It was not until that day that Gerton "just couldn't bear it anymore" and her "hand wouldn't do it." (J.A. 448, 451) Gerton did not return to work after September 25 because she could no longer perform either the DA or the Toll job. (J.A. 156) Disability claims by Gerton after September 25 are not before this court. As noted above, Gerton does not challenge on appeal the district court's ruling that Gerton failed to demonstrate a viable claim of disability discrimination based on Gerton's inability to use either hand, because Gerton did not request any specific accommodation for work without using either hand.

Gerton claims that given her physical impairment, her education and work experience, she was significantly limited in her ability to pursue employment in any other sector of the economy.

accommodate her, as more fully discussed below.

14

Gerton submits the opinion of Gary A. Shaw, a Certified Employment Consultant, to support her claim. (J.A. 520-21) Mr. Shaw opines that considering Gerton's "age, education, limited transferable skills, and physical impairments, it is unlikely that she can successfully compete in the job market today." (J.A. 521) "Employers have shown reluctance to employ workers who cannot fully comply with the job description and who need special concessions, or those who work with the distraction of pain." (J.A. 521) Mr. Shaw's opinion did not compare Gerton's access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in Gerton's geographic vicinity. Gerton has not presented sufficient evidence to raise a genuine issue of material fact that her impairment substantially limited the major life activity of working.

We affirm the district court's finding that Gerton failed to submit any evidence tending to show that her wrist condition impeded her ability to perform other jobs, and, therefore, is not disabled within the meaning of the ADA.

### 5. Reasonable Accommodation

In a claim for discrimination based on disability, "[if] the plaintiff fails to establish a *prima facie* case, it is unnecessary to address the question of reasonable accommodation." *Gaines*,107 F.3d at 1176 (citing *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985) (citations omitted)). Even if Gerton could show she was disabled, as the district court noted, Gerton does not dispute that Verizon provided her the only accommodation she ever specifically requested. Gerton performed as a Toll Operator from late April 2001 to September 10, 2001, and, Gerton's request to be assigned permanently to Toll was approved on September 20, 2001. Gerton is apparently claiming that Verizon did not reasonably accommodate her because it did not

15

"immediately" move her from the DA Operator position to the Toll Operator position upon her request, specifically, on March 19 and September 10, 2001. Gerton has not cited any authority to support her argument that an employer must "immediately" act on an accommodation request by an employee. We have held that an employee cannot base a disability discrimination claim upon an employer's delay in providing a requested accommodation where the delay is due to internal processing or to events outside the employer's control. *See Kaltenberger v. Ohio College of Podiatric Medicine,* 162 F.3d 432, 437 (6th Cir. 1998); *see also Selenke v. Med. Imaging of Colorado,* 248 F.3d 1249, 1262 (10th Cir. 2001).

As to the March 19, 2001 date, Verizon waited until the end of April 2001 to move Gerton from the DA Operator position to the Toll Operator position. However, while a DA Operator, Gerton was able to perform the job by using one hand and taking frequent breaks.

Regarding the September 10, 2001 claim, Verizon submitted evidence that it was not until later in the afternoon of September 10 that it received the fax from Gerton's personal physician regarding the medical records to support her request. Less than two weeks later, on September 21, 2001, after consultation with Verizon's retained physician, Gerton's personal physician, and the review by the Verizon ADA Group, Gerton's supervisor was notified that her request for transfer to the Toll group was approved. September 21, 2001 was the last date Gerton physically worked at Verizon.

Gerton has not shown sufficient evidence that any delay in her request for accommodation was unreasonable. Gerton admits that she was able to perform the DA Operator position with one hand, and, it was not until her last day of work on September 21, 2001 that she was unable to use both hands. The district court did not err in finding that, even though Gerton failed to prove a *prima*

16

*facie* case, Verizon reasonably accommodated Gerton, even though the accommodation was not at the exact time of her request.

### III.

For the reasons set forth above, we affirm the district court's order granting summary judgment in favor of Verizon.