OPINION
{¶ 1} Appellant Randy Parrot appeals the trial court's December 16, 2005, Judgment Entry granting summary judgment in favor of Appellee A.R.E., Inc.
 {¶ 2} This case comes to us on the accelerated calendar. App. R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:
 {¶ 3} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 4} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF THE FACTS AND CASE {¶ 5} On June 20, 1996, Appellant Randy Parrot was hired by A.R.E., Inc., a manufacturer of aluminum and fiberglass truck accessories. (Hartong depo. at 6-9). Appellant Parrot was formerly employed by A.R.E. at its facility in Mt. Eaton, Ohio, which manufactures aluminum truck caps and tool boxes. (Hartong depo. at 7-8).
 {¶ 6} Appellant was initially hired as a janitor. Within a year, however, he applied for and received a transfer to the "shipping and receiving" department where he loaded and unloaded trucks by forklift and by hand.
 {¶ 7} In 1999, Appellant applied for and received a position as a "loader" in the loading department. He was 46 at that time.
 {¶ 8} Appellant was injured on the job in October of 1999, which led to a workers' compensation claim and a five month leave of absence. (Parrot depo. at 1141-19; 122-123).
 {¶ 9} On April 30, 2003, Appellant injured his left arm while pushing lids onto racks, which resulted in a second workers' compensation claim. (Parrot depo. at 1641-65; Hartong depo. at 19-20).
 {¶ 10} On September 23, 2003, Appellant applied for and received a transfer to the commercial fabrication department, which manufactures truck bed tool boxes. (Parrot depo. at 134-144, 169-172). Appellant was required to lift up to 80 pounds. As described by Appellant, his primary responsibility was to "pop the rivet" into tool boxes and perform all other facets of such job including all of the heavy lifting associated with such riveting. The pop rivet gun weighed a little over five pounds. (Parrot Depo. at 219).
 {¶ 11} Appellant continued in that position until he required surgery on his left elbow, which he had on February 19, 2004. (Parrot depo. at 192).
 {¶ 12} Upon his return to work following his surgery, Appellant's physician placed a restriction on him ordering him to not use his left arm for two weeks.
 {¶ 13} Upon his return to unrestricted work, Appellant continued to feel pain and again sought treatment with his doctor.
 {¶ 14} Eventually, Appellant's doctor placed a lifting restriction on him of approximately five pounds. (Parrot Affidavit, ¶ 10).
 {¶ 15} Appellant was placed in A.R.E.'s transitional work program.
 {¶ 16} Beginning October 11, 2004, Appellant was placed on FMLA leave. (Hartong depo. at 29; Defendant's Deposition Exhibit YY). During such FMLA leave, Appellant underwent a functional capacity evaluation. As a result, Appellant was placed on further restriction of no lifting, repetitive or otherwise, and sedentary work.
 {¶ 17} When his FMLA leave expired, Appellant received a letter dated December 8, 2004, from M.J. Simmons, a Human Resource Manager for A.R.E., which stated A.R.E., Inc. was placing him on an indefinite medical leave of absence stating "[Appellant's] health condition has prohibited [him] from returning to work" and canceling his insurance benefits. (Hartong depo. at 23-24; December 8, 2004 letter).
 {¶ 18} Appellant was 51 years of age at this time.
 {¶ 19} On May 31, 2005, Appellant filed a Complaint in this matter against Appellee A.R.E., Inc. The Complaint alleged claims of employment discrimination based both on disability/handicap and age.
 {¶ 20} On November 14, 2005, Appellee A.R.E., Inc. filed a Motion for Summary Judgment.
 {¶ 21} On November 30, 2005, Appellant filed an opposition brief and also filed a Motion to Strike Impermissible Evidence on December 9, 2005.
 {¶ 22} While the case was in the process of being mediated by the Stark County mediation department on December 16, 2005, the trial court issued its Judgment Entry granting the Motion for Summary Judgment and denying the Motion to Strike.
 {¶ 23} It is from this Judgment Entry that Appellant prosecutes the instant appeal, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 24} "I. THE TRIAL COURT ERRED IN RELYING ON IMPERMISSIBLE EVIDENCE IN GRANTING A.R.E.'S SUMMARY JUDGMENT MOTION, AND IN DENYING MR. PARROT'S MOTION TO STRIKE RELATING TO SAID EVIDENCE.
 {¶ 25} "II. THE TRIAL COURT ERRED GRANTING A.R.E.'S SUMMARY JUDGMENT MOTION ON MR. PARROT'S DISABILITY/HANDICAP DISCRIMINATION CLAIM.
 {¶ 26} "III. THE TRIAL COURT ERRED GRANTING A.R.E.'S SUMMARY JUDGMENT MOTION ON MR. PARROT'S AGE DISCRIMINATION CLAIM."
 Summary Judgment Standard of Review {¶ 27} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party,Inc. (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:
 {¶ 28} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 29} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 30} It is based upon this standard that we review appellant's assignments of error.
 I. {¶ 31} In Appellant's first assignment of error, Appellant argues that the trial court erred in relying on impermissible evidence in granting Appellee's Motion for Summary Judgment. We disagree.
 {¶ 32} Specifically, Appellant argues that eleven (11) of the exhibits attached to Appellee's Motion for Summary Judgment were impermissible under Civ.R. 56(C) and that it was therefore error for the trial court to consider same. These exhibits, according to Appellant, are purportedly unsworn, uncertified copies of medical records relating to Appellant.
 {¶ 33} Appellant further argues that the trial court erred in denying its Motion to Strike filed in response to the "Certificate of Evelyn P. Schonberg" filed by Appellee's counsel with A.R.E.'s Reply Brief, stating that the medical records were produced to her in a letter from Plaintiff's counsel.
 {¶ 34} The trial court denied the Motion to Strike, finding that the medical records, which were the records of Appellant's own physician, Dr. Coss, were provided in response to Appellee's interrogatories and that same were therefore admissible.
 {¶ 35} As stated above, Civ.R. 56(C) provides, in relevant part:
 {¶ 36} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, . . ."
 {¶ 37} Upon review, we find that the subject medical records were provided in response to requests for production during discovery, and therefore such documents were permissible under Civ.R. 56(C) and the trial court did not err in considering such medical records in ruling on Appellee's Motion for Summary Judgment.
 {¶ 38} Furthermore, we find that the trial court's summary judgment decision was supported by sufficient evidence even without the exhibits complained of by Appellant.
 {¶ 39} Appellant's first assignment of error is overruled.
 II. {¶ 40} In Appellant's second assignment of error, Appellant argues that the trial court erred in granting Appellee's Motion for Summary Judgment on Appellant's disability/handicap discrimination claim. We disagree.
 {¶ 41} To establish a prima facie case of disability discrimination, an employee must demonstrate: (1) that he or she was disabled; (2) that the employer took an adverse employment action against the employee, at least in part, because the employee was disabled; and (3) that the employee could safely and substantially perform the essential functions of the job in question despite his or her disability. Hood v. Diamond Prod.,Inc., 74 Ohio St.3d 298, 1996-Ohio-259, 658 N.E.2d 738. An employee may satisfy the third element of the prima facie case by showing that he could have performed the essential functions of the job with a reasonable accommodation, if necessary. Shaver v.Wolske Blue (2000), 138 Ohio App.3d 653, 663, 742 N.E.2d 164.
 {¶ 42} Once an employee establishes a prima facie case of disability discrimination, "the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken." Hood v. Diamond Prod., Inc., supra. If the employer does so, "then the employee * * * must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." Id.
 {¶ 43} In the instant case, the trial court found that the evidence did not establish that Appellant has a disability. R.C.4112.01(A)(13) defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."
 {¶ 44} Appellant argues that he is disabled due to his inability to lift more than five (5) pounds with his left arm and that such impairment substantially limits the "major life activity" of "working".
 {¶ 45} Upon review, we find that the evidence in this case fails to show that Appellant's condition meets the threshold requirement of a substantial limitation of a major life activity.
 {¶ 46} While it is undisputed that Appellant was terminated from his position at A.R.E. due to his inability to lift, and that his impairment disqualifies him from working as a laborer at A.R.E., Appellant has failed to show that such impairment disqualifies him from a substantial class or a broad range of jobs. Gerton v. Verizon South Inc., 145 Fed. Appx. 159, 165-66
(6th Cir. 2005). "Merely having an `impairment' does not make one disabled for purposes of the ADA." Toyota Motor Mfg., KentuckyInc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 690,151 L.Ed.2d 615 (2002). The plaintiff also must demonstrate that the impairment "limits a major life activity" and that the limitation is "substantial." Id. (citing 42 U.S.C. § 12102(2)(A)). Pursuant to Sixth Circuit precedent, a lifting restriction — in and of itself — does not constitute a disability under the ADA.See McKay v. Toyota Motor Mfg., USA, Inc., 110 F.3d 369, (6th Cir. 1997) holding that the plaintiff's weight lifting restrictions due to carpal tunnel syndrome are not a disability under the ADA where there was no evidence that the condition restricted the plaintiff from performing a broad class of jobs or any other major life activity); Gerton, supra.; Gayer v.Continental Airlines, Inc., 21 Fed. Appx. 347, 350 (6th Cir. 2001) holding that the plaintiff's inability to lift over 40 pounds did not, alone, render her disabled; Law v. City ofScottsville, (June 15, 2000) Sixth Circuit App. No. 98-6335, holding that the plaintiff, who was under a forty pound lifting restriction, was not disabled as defined by the ADA.
 {¶ 47} Based on the foregoing, we find that the trial court did not err in finding that Appellant failed to prove that he was disabled. We find, as did the trial court, that there was no evidence that Appellant's injury otherwise substantially limits him from engaging in the major life activities of working, lifting or performing manual tasks. Merely because he can no longer perform repetitive factory work does not render him significantly limited under the ADA.
 {¶ 48} According to the relevant regulation, "The termsubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."29 C.F.R. § 1630.2(j)(3)(i) (emphasis added).
 {¶ 49} Appellant has not established that he is significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes as compared to similarly-situated persons with comparable training, skills and abilities. Therefore, he is not substantially limited in the major life activity of working. McKay v. Toyota Motor Mfg.,U.S.A., Inc. 110 F.3d 369, 371 (C.A.6 (Ky.), 1997)
 {¶ 50} In a claim for discrimination based on disability, "[if] the plaintiff fails to establish a prima facie case, it is unnecessary to address the question of reasonable accommodation." Gaines v. Runyon, 107 F.3d 1171, 1176 (6th Cir. 1997) (citing Jasany v. United States Postal Service,755 F.2d 1244, 1250 (6th Cir. 1985) (citations omitted)).
 {¶ 51} Appellant's second assignment of error is overruled.
 III. {¶ 52} In his third assignment of error, Appellant argues that the trial court erred in granting Appellee's motion for summary judgment on his age discrimination claim. We disagree.
 {¶ 53} Absent direct evidence of age discrimination, a plaintiff can establish a prima facie case of age discrimination under Ohio law in an employment discharge action by demonstrating that he or she "(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age." Coryell v. Bank OneTrust Co. N.A., 101 Ohio St.3d 175, 803 N.E.2d 781,2004-Ohio-723, paragraph one of the syllabus.
 {¶ 54} If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its discharge of the plaintiff. Barker v. Scovill, Inc. (1983), 6 Ohio St.3d 146,148, 451 N.E.2d 807; Texas Dept. of Community Affairs v.Burdine (1981), 450 U.S. 248, 253, 101 S.Ct. 1089,67 L.Ed.2d 207. Should the employer carry this burden, the plaintiff must then prove that the reasons the employer offered were not its true reasons, but merely a pretext for discrimination. Id.
 {¶ 55} The trial court found, that based upon Appellant's inability to perform repetitive lifting, he could not perform the essential functions of his job and was therefore not qualified for the position.
 {¶ 56} Appellant's only argument in support of his age discrimination claim is that he was replaced by a younger worker.
 {¶ 57} Even if Appellant could establish a prima facie case of age discrimination, the second step in the burden-shifting analysis is whether Appellee articulated a legitimate, nondiscriminatory reason for terminating Appellant's employment. In setting forth such a reason, an employer is not required to persuade the court that it was actually motivated by the proffered reason, but rather it must merely "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." St.Mary's Honor Ctr. v. Hicks (1993), 509 U.S. 502, 509,113 S.Ct. 2742, 125 L.Ed.2d 407 (emphasis sic). See, also, Reeves, supra, at 142 (relying upon Hicks in stating that an employer's satisfaction of its burden of production cannot not involve credibility determinations); Burdine, supra, at 255 (holding that an employer's burden is met if it raises a genuine issue of fact as to whether it discriminated against the plaintiff by "clearly set[ting] forth, through the introduction of evidence, the reasons for the plaintiff's rejection").
 {¶ 58} We find that A.R.E. had a legitimate reason to terminate Appellant in that he could not perform his job due to the lifting restrictions placed upon him by his physician.
 {¶ 59} Appellant's third assignment of error is overruled.
 {¶ 60} This cause is affirmed.
By: Boggins, J. Wise, P.J and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, is affirmed. Costs assessed to appellant.