NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0761n.06
Filed: October 12, 2006

No. 05-6242

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

REBECCA DEL VALLE, RICKEY REID, JEANNE
BLANKENSHIP,

    Plaintiffs-Appellants,

        v.

BELLSOUTH TELECOMMUNICATIONS, INC.,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Middle District of Tennessee

_____/

**Before:**    **GUY, SUTTON, and ALARCÓN[*], Circuit Judges.**

**PER CURIAM.**    Plaintiffs Rebecca Del Valle, Rickey Reid, and Jeanne Blankenship brought this action alleging that BellSouth Telecommunications, Inc., breached the terms of the settlement agreement resolving their claims of employment discrimination. Appealing from the grant of summary judgment to BellSouth, plaintiffs argue that the district court erred in finding that BellSouth had complied with the requirement to consider plaintiffs for positions within one year and create new positions for plaintiffs within six weeks if plaintiffs were not rehired within one year, and that the agreement did not require BellSouth to "bridge" the plaintiffs' seniority immediately upon rehire. We affirm for the reasons that

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

follow.

**I.**

The Communications Workers of America, three of its local unions, and several individuals filed a class action lawsuit against BellSouth, alleging that BellSouth engaged in gender and age discrimination by failing to grant promotions and transfers to current and former BellSouth employees to the position of Electronic Technician (ET). After the motion for class certification was denied, putative class members, including the plaintiffs in this case, filed motions to intervene as individual plaintiffs. A global settlement of the litigation was reached during mediation and before the motions to intervene had been decided. The settlements had a monetary component and, for some putative plaintiffs, a job reinstatement component.[1]

An addendum to the global settlement identified 24 individual claimants to ET positions—including Del Valle, Reid, and Blankenship—and provided as follows:

> 2.      For a period of one year from the date all conditions in Paragraph 5 of the Settlement Agreement are met, BellSouth will consider the above Claimants for ET vacancies within a 35 mile radius of the exchange listed for each Claimant. The Claimants will be deemed qualified pursuant to the terms of the Collective Bargaining Agreement and will be deemed to have a valid job bid on file. Claimants will be selected for ET positions when vacancies occur, consistent with the provisions of the Collective Bargaining Agreement. Those employees who are no longer BellSouth employees will be considered to have the level of seniority they held on the date when they left BellSouth's payroll.
>
> 3.      Claimants will be selected for ET positions as vacancies occur consistent with the provisions of the Collective Bargaining Agreement. . . .

---

[1]Plaintiffs were not working for BellSouth at the time.

> 4.    If it appears, for whatever reason, that any of the above Claimants will not be offered an ET position in a vacancy by the end of the referenced 1-year period, BellSouth will create sufficient ET positions specifically for any such remaining Claimants as soon as it becomes apparent that there will be an insufficient number of vacancies. In no circumstances will the amount of time required to create such positions exceed 6 weeks following the expiration of the 1-year period. Such positions will be created over and above the vacancies which BellSouth would have created absent this Settlement Agreement, specifically as an equitable remedy in settlement of this action. Placement in such ET positions will not be subject to the verification process set forth in Paragraph 3 of this exhibit. . . .

Each plaintiff was required to execute a separate settlement and release with an addendum that included the above-quoted language. There is no dispute that the conditions for determining the triggering date for the one-year ET job consideration period were met on June 19, 2002. This meant that BellSouth had until June 19, 2003, to consider plaintiffs for ET positions as vacancies occurred. If not enough vacancies occurred by June 19, 2003, BellSouth was obligated to create ET positions for plaintiffs within six weeks, or by August 1, 2003.

Blankenship was rehired by BellSouth as an ET within the one-year period and began working on October 14, 2002. Although De Valle and Reid also were eventually rehired into ET positions, neither returned to work during the one-year period or within the following six-week period. Del Valle was formally offered an ET position in a letter dated November 25, 2003, and began work on January 5, 2004. Reid was formally offered an ET position on October 29, 2003, and began work on December 8, 2003. Del Valle and Reid (but not Blankenship) claimed that BellSouth violated the settlement agreement by failing to rehire them either within the one-year period, or within six weeks thereafter. On appeal, Del Valle

and Reid no longer argue that the settlement required that they be rehired within the one-year period.

James Glenister, the attorney for BellSouth who negotiated the settlement, testified that plaintiffs were considered for positions during the one-year time period. Glenister also testified that Del Valle was verbally offered an ET position through her attorney in June of 2002. John Quinn, counsel for the union and former counsel for Del Valle, corroborated Glenister's testimony:

> Prior to the expiration of the time period in the settlement agreement in which BellSouth had agreed to consider Ms. Del Valle for an ET position, I was contacted by Jim Glenister of BellSouth. During this conversation, BellSouth offered Ms. Del Valle the option of being rehired and placed in the ET job as per the settlement, or a buy-out in recognition of the fact that she could be subject to layoff in the near future because of a downturn in the telecommunications industry which was not anticipated at the time of the settlement.

Glenister testified that Reid was also verbally offered an ET position through his attorney, Julie Fosbinder. Glenister testified that he offered Fosbinder the option of negotiating a monetary payment in lieu of Reid's rehiring and that they subsequently engaged in verbal negotiations on the issue. Reid denies receiving the offer.[2]

All three plaintiffs also claimed that BellSouth violated the settlement agreement by not crediting them immediately upon rehire with their previously accrued seniority. The CBA created seniority rights for bargaining unit members, including plaintiffs, and defined "seniority" as "the length of continuous BellSouth service . . . accrued from the date an

---

[2]Fosbinder declined to comment on any conversations between Glenister and herself due to confidentiality restrictions in the settlement agreement.

employee actually begins work if the employee has been continuously engaged or the service accrued in the case of an employee who has not been continuously engaged." Under the CBA, seniority governs in all "matters relating to assignment of hours and vacations, layoffs, rehiring after layoffs, voluntary transfers, involuntary transfers and promotions." The CBA creates the following "bridging" rights in Article 1.26B:

> Bridging. When a former employee is rehired by the Company, he/she shall be given credit for the former service as follows:
>
> 1.    When the break in service has been less than 6 calendar months, the former service shall be bridged immediately and the seniority date adjusted accordingly.
>
> 2.    When the break in service has been 6 calendar months or more, the former service shall be bridged after 3 continuous years of service, and the seniority date adjusted accordingly.

When rehired, Del Valle, Reid, and Blankenship each had a break in service of more than six months. BellSouth did not bridge their service dates, which made the date of rehire the new seniority date. Plaintiffs alleged that the settlement granted "bridging" rights in the last sentence of Paragraph 2, which stated: "Those employees who are no longer BellSouth employees will be considered to have the level of seniority they held on the date when they left BellSouth's payroll."

Del Valle and Reid lost their ET positions not long after rehire, allegedly as a result of their low seniority. Del Valle was transferred to the position of circuit layout assigner on March 28, 2004, and laid off on June 26, 2004. Reid was transferred to a collections representative position on April 1, 2004. Blankenship alleged that she was in danger of losing her job due to her low seniority. There seems to be no dispute, however, that

Blankenship received credit for her prior seniority during the pendency of this appeal under the general "bridging" provisions of Article 1.26B of the CBA. As such, we address only the claims of Del Valle and Reid.[3]

## II.

We review *de novo* the district court's grant of summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Failure to Rehire Plaintiffs before August 1, 2003

The district court concluded that there was no genuine issue of fact whether BellSouth complied with the terms of the settlement agreement and addendums because BellSouth offered Del Valle and Reid ET positions through their attorneys before August 1, 2003. Plaintiffs rely on two categories of proof—correspondence after August 1 referencing job offers and the absence of any written offers prior to August 1—to argue that a question of fact exists whether BellSouth actually offered ET positions to their attorneys before August 1. The written correspondence consisted of four letters:

(1) a letter from John Quinn to Del Valle's new attorney dated September 9, 2003, in

---

[3]The only remedy Blankenship sought was "appropriate seniority." BellSouth argues that since her seniority has now been bridged, Blankenship's appeal no longer presents a case or controversy. Plaintiffs do not directly respond, but offered no arguments concerning Blankenship's seniority claim in the brief on appeal or at oral argument. We view this as an abandonment of her claim on appeal.

which Quinn stated "At this time, Bell South has offered Ms. Del Valle the option of being rehired and placed in an Electronic Technician job . . . .";

(2) a letter from Quinn to Del Valle's attorney dated October 10, 2003, stating: "It is my understanding that Bell South stands ready to fulfill the final component of the settlement with your client  Ms. Del Valle - placing her in an electronic technician position.";

(3) a letter from Glenister to Del Valle on October 17, 2003, stating: "As you know . . . Bell South agreed to provide an offer of an ET position to Ms. Del Valle. . . . Because [Quinn] was Ms. Del Valle's counsel of record in that litigation, I contacted John Quinn and offered an alternative proposal: that in lieu of such a job offer, BellSouth would pay Ms. Del Valle['s] potential salary . . . ."; and

(4) a letter from Fosbinder to Glenister dated November 11, 2003, in which she states: "I am writing to confirm the voice mail that I left for you today.  Mr. Reid wishes to be placed in the ET position, rather than make another offer to settle the placement issue."

Plaintiffs contend that these letters cast doubt on Glenister's credibility because all of the letters were written after the August 1 deadline.  The letters, while not directly corroborating Glenister's testimony that offers of employment were made prior to August 1, do not contradict his statements either.  To the contrary, the letters corroborate Glenister's statements that timely offers for placement in ET positions were coupled with offers of buyouts that initiated new negotiations with plaintiffs' attorneys concerning whether plaintiffs would prefer a buyout or an ET position.

Plaintiffs also emphasize that with no documentary evidence of a timely offer, a factfinder could question Glenister's credibility.  At the summary judgment stage of litigation, the moving party is entitled to summary judgment if the nonmoving party fails to support an essential element of the case. *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999); *Gaines v. Runyon*, 107 F.3d 1171, 1174-75 (6th Cir. 1997).  A respondent

to a motion for summary judgment may not defeat the motion simply by arguing that the movant's evidence may not be credible. Rather, the respondent must present affirmative evidence supporting its case. *See Fogerty v. MGM Group Holdings Corp.*, 379 F.3d 348, 353-54 (6th Cir. 2004) (collecting cases), *cert. denied*, 543 U.S. 1120 (2005). The absence of documentation corroborating the statements of Quinn and Glenister does not create a question of fact whether offers were made through plaintiffs' attorneys before August 1, 2003.

## B.       The Addendum's Requirement that BellSouth Create a Position

Plaintiffs also challenge the district court's further finding that the addendum did not require BellSouth to either make an offer or rehire plaintiffs before August 1, 2003. In elaborating on why BellSouth was entitled to summary judgment, the district court stated:

> Moreover, under the express terms of the Agreement, BellSouth was not required to either offer the position or to hire the plaintiffs within the six weeks following the expiration of the one-year period. The unambiguous language of the Agreement dictates only that "[i]n no circumstances will the amount of time required to create such positions exceed 6 weeks following the expiration of the 1-year period." Placement is another step in the process, as evidenced by the language of the Agreement itself, which states that "[p]lacement in such ET positions will not be subject to the verification process set forth in Paragraph 3 of this exhibit." Because there is no evidence in the record to dispute Glenister's contention that BellSouth created ET positions for Del Valle and Reid within the six-week period, no reasonable juror could find that the defendant breached the terms of the Settlement Agreement in this regard.

Plaintiffs assert without amplification that the district court misinterpreted the clear and unambiguous language requiring that BellSouth create a position for the plaintiffs within six weeks of the one-year time limitation. At oral argument, plaintiffs attempted to equate

the obligation to create a position within the six-week period with a requirement that the plaintiffs also be "placed" or formally rehired within that six-week period. While the settlement clearly contemplated that the plaintiffs would be rehired, nothing in these provisions can fairly be read to require that the plaintiffs be back to work within the specified six-week period. The district court did not err in finding that the plain meaning of the language did not obligate BellSouth to have offered or "placed" plaintiffs in ET positions prior to August 1, 2003.

## C.    Seniority Levels

Finally, Del Valle and Reid argue that the settlement granted them "bridging" rights to which they admittedly would not have been entitled under Article 1.26B of the CBA. Plaintiffs argue that the last sentence of Paragraph 2 "trumps" the CBA and required BellSouth to rehire them at the same seniority level as when they separated from BellSouth more than six months earlier. BellSouth, on the other hand, maintains that Paragraph 2 only required that the plaintiffs' prior seniority be used in considering them for ET vacancies during the one-year window. Upon rehire, BellSouth contends, the bridging of seniority would be governed by the CBA.

We interpret agreements under § 301 of the National Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1998). We apply traditional rules of contract interpretation, however, as long they do not conflict with federal labor policies. *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983).

> Many of the basic principles of contractual interpretation are fully appropriate for discerning the parties' intent in collective bargaining

agreements. For example, the court should first look to the explicit language of the collective bargaining agreement for clear manifestations of intent. . . . The court should also interpret each provision in question as part of the integrated whole.

*Id*. at 1479 (internal citations omitted). Applying general principles of contract construction, the district court determined that the last sentence of Paragraph 2, when read in the context of the rest of the agreement, did not require BellSouth to bridge the plaintiffs' seniority rights upon rehire. The district court added in a footnote that: "Even if the language of the Settlement Agreement were ambiguous, extrinsic evidence revealing the intent of the drafters would support the court's interpretation."[4]

As the district court observed, Paragraph 2 governed the consideration of plaintiffs for ET vacancies consistent with the CBA during the one-year window. The final sentence provided that plaintiffs who were no longer BellSouth employees—and thus would have had no seniority when it came to selection consistent with the CBA—would "be considered to have the level of seniority they held on the date when they left BellSouth's payroll." Whether or not the settlement agreement trumps the CBA is not dispositive in this case because the two are not in conflict. Because nothing in Paragraph 2 addressed the plaintiffs' rights or BellSouth's obligations once plaintiffs were rehired, we agree with the district court that the settlement did not require BellSouth to "bridge" the plaintiffs' seniority immediately

---

[4]Specifically, Quinn, the CWA attorney who negotiated on behalf of the plaintiffs, explained that: "The negotiated settlement did not call for immediate bridging of seniority and was never intended to do so. . . . Rather, because 24 plaintiffs were to be considered for ET jobs as part of the settlement agreement, the purpose of [the last] sentence was to determine in which order BellSouth would consider the 24 plaintiffs for ET positions as vacancies occurred during the first year after the settlement agreement was entered into." Glenister, BellSouth's attorney, likewise attested that: "The Settlement Agreement does not modify or amend Article 1.26 of the CBA and does not require that Plaintiff's seniority be bridged upon rehire."

upon rehire.

Plaintiffs also argue that the district court erred by relying on extrinsic evidence of intent to alter, vary, or qualify the plain meaning of an unambiguous contract. This claim of error is without merit. It is clear that the district court considered the statements of Quinn and Glenister in the context of an alternative holding and not as part of the reasoning in support of the conclusion that the plaintiffs' bridging rights were governed by the CBA.

**AFFIRMED**.